# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-01197-SCT

*KEVIN G. CLARK*

*v.*

*WILLIAM E. KNESAL d/b/a BILL KNESAL,
CONTRACTOR AND DAVID LEVA d/b/a DAVID
LEVA STUCCO*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/11/2011 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT C. WILLIAMSON, JR. |
| ATTORNEYS FOR APPELLEE: | SCOTT CORLEW |
| | VINCENT J. CASTIGLIOLA, JR. |
| | JIM DAVIS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/16/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The case at bar is the result of more than fifteen years of litigation pertaining to a contract dispute regarding the construction of Kevin Clark's house. During the litigation, the contractor and counterplaintiff, William Knesal, died. His defense attorney, provided to him by his insurance company upon commencement of the suit, filed a suggestion of death in the deceased's name. When no substitution motion was filed within the prescribed ninety-day period, Knesal's attorney moved to dismiss. Knesal filed the appropriate motion for substitution well after the mandatory ninety-day period, asserting that Knesal's attorney had

no standing to submit a suggestion of death and that, additionally, he never received proper notice of the filing until the motion to dismiss was served. The trial court dismissed the action, and Clark appealed. We are asked to determine who may file a suggestion of death with the trial court and what circumstances surrounding a failure to file an appropriate substitution motion within the statutory period constitute "excusable neglect."

### Facts and Procedural History

¶2. Kevin Clark hired William Knesal to construct a home in Harrison County in 1995. In 1996, Knesal sued Clark for $89,337, alleging nonpayment for the work performed. Clark then filed a counterclaim for damages, alleging that Knesal's work was incomplete and defective. In response to the counterclaim, Knesal filed indemnity claims against several subcontractors who also performed work on Clark's home. Tim Holleman represented Knesal in his claims against Clark, but Knesal's insurance company had retained Vincent Castigliola and Scott Corlew of Bryan, Nelson, Schroeder & Banahan to defend Clark's counterclaims. In August 2000, most of the circuit court proceedings were stayed when one of the third-party defendants, Reliant Building Products, Inc. ("Reliant"), filed for bankruptcy. Matters that were not adverse to Reliant were permitted to proceed.

¶3. On October 1, 2008, Knesal died intestate. On November 20 of that year, a hearing was held on Clark's motion to lift the stay and for a scheduling order. At the hearing, counsel for Clark, Robert Williamson, reported that the two sides had discussed terms and conditions of a possible settlement. Participants in the settlement discussions included Holleman, Castigliola, and Scott Corlew.

2

¶4.   No further action was taken until nearly ten months later on September 11, 2009, when Corlew filed a suggestion of Knesal's death on the record. The suggestion was properly served on all parties, including Williamson, a solo practitioner at the time, who was out of town on a two-month sabbatical. According to Williamson, he had set up a system in his home office to handle all the mail his practice would receive when he was gone by which letters and correspondence were scanned and e-mailed to him daily by a legal assistant. Here, the system failed him, and he did not become aware that the suggestion of death had been filed. On April 20, 2010, seven months after the filing of the suggestion of death, Corlew filed a motion to dismiss the case against Knesal. Williamson maintains he did not know the suggestion of death had been filed until Corlew filed the motion to dismiss.

¶5.   On May 13, 2010, Clark filed a petition to open Knesal's estate in the Harrison County Chancery Court. The petition was granted on June 9, 2010, issuing general letters of administration of Knesal's estate to the Harrison County administrator, John G. McDonnell. McDonnell was authorized to administer all "the goods and chattels, rights and credits" of Knesal. On August 4, 2010, Clark filed an amended motion in the circuit court case to substitute parties, requesting McDonnell, as administrator of Knesal's estate, be substituted for Knesal. Following a hearing on the motion to dismiss and the motion to substitute, the trial court granted the motion to dismiss in July 2011. The court held Clark's motion to substitute was untimely, and that Knesal's attorney of record had authority to file a suggestion of death on Knesal's behalf. The order dismissing the case is the subject of the present appeal.

**Discussion**

3

**I. Whether the filing of the suggestion of death triggered the ninety-day period for substitution under Rule 25 when: (1) the suggestion did not identify Knesal's successors or representative; (2) the suggestion was not served on Knesal's successors or representative; and (3) Knesal's attorneys who represented him at his death filed the suggestion of death.**

¶6. Mississippi Rule of Civil Procedure 25(a)(1) governs the procedure for substitution in the event of a party's death:

> If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons. The action *shall be dismissed* without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion.

M.R.C.P. 25(a)(1) (emphasis added). The rule is similar to Federal Rule of Civil Procedure 25(a) as it was amended in 1963. Clark cites many federal cases which support his view that the suggestion of death must identify potential heirs or representatives, that it must be served on those potential heirs and representatives, and that the attorneys for the deceased may not file the suggestion of death.

> *A. Whether the suggestion of death is sufficient to trigger the ninety-day period for substitution if it does not identify any successors or representatives to be substituted.*

¶7. Clark first argues that the suggestion of death was improper because it did not identify the successor or representative for Knesal, nor was it served on his successor or representative. We have never before addressed this question directly. However, given that our rules are patterned on those of the federal government, it is therefore proper for us to look

4

to the federal courts for guidance on this question of interpretation. *See Hood ex rel. State Tobacco Litigation*, 958 So. 2d 790 (Miss. 2007); *Shaw v. Shaw*, 603 So. 2d 287 (Miss. 1992). Generally, under the Federal Rules of Civil Procedure, "[t]he statement noting the death must be in writing *and identify the representatives to be substituted*, and it must be served on the parties . . . and upon persons not parties in the manner provided in Rule 4 for the service of a summons." 7C Wright & Miller, *Federal Practice and Procedure* § 1955 (2008) (emphasis added).

¶8. In actuality, the federal courts are divided on the question. The Circuit Court for the District of Columbia found that allowing a suggestion to be filed by the defendant which did not identify the successors or representatives "would open the door to a tactical maneuver to place upon the plaintiff the burden of locating the representative of the estate within 90 days." *Rende v. Kay*, 415 F.2d 983, 986 (D.C. Cir. 1969) ("No injustice results from the requirement that a suggestion of death identify the representative or successor of an estate who may be substituted as a party for the deceased."). Several courts have found that failure to identify the deceased's successors or representatives in the suggestion of death rendered the suggestion insufficient to trigger the ninety-day time period for substitution. *See Al-Jundi v. Rockefeller*, 88 F.R.D. 244, 246-47 (D.C.N.Y. 1980); *see also Smith v. Planas*, 151 F.R.D. 547, 549 (S.D.N.Y. 1993); *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993).

¶9. Conversely, the Second Circuit Court of Appeals has explicitly disagreed with that interpretation and found that no such requirement exists. *Unicorn Tales, Inc. v. Bannerjee*, 138 F.3d 467 (2d Cir. 1998). The *Unicorn Tales* court held that it was unnecessary to

5

identify the successors or representatives of the decedent in the suggestion of death because the language of the rule said nothing about such an identification and was thus sufficient to trigger the ninety-day period. *Id*. at 470. This interpretation has been embraced by the Fifth Circuit. *See Ray v. Koester*, 85 F. App'x 983, 984 (5th Cir. 2004) (cited in *Keller v. Bennett*, 103 So. 3d 747, 753 (¶ 24) (Miss. Ct. App. 2012)).

¶10. We find the reasoning of the *Unicorn Tales* and *Ray* courts to be persuasive. Like the federal rule, the language of our rule makes no mention of a requirement to identify the successor or representative of the decedent in the suggestion of death. Nothing in the rule mandates including that information. The *Rende* court was concerned that a party could file the suggestion and place the burden on the opposition to find the successors or representatives within ninety days, but we agree with the Second Circuit that Rule 6(b), allowing enlargement of a prescribed procedural time limit, acts as an effective safeguard for any unfortunate party who cannot identify the successor or representative to be substituted for the decedent within ninety days.

¶11. Accordingly, we hold that no identification of the successors or representatives of the decedent is required and affirm the trial court's determination that failure to identify the successors or representatives of Knesal's estate did not toll the ninety-day time period for substitution.

> **1. Whether the suggestion of death was sufficient to trigger the ninety-day period for substitution if it was not served on the non-party successors or representatives of the estate.**

¶12. "The motion for substitution . . . shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons.

6

. . . [T]he death is suggested upon the record by service of a statement of the fact of death as herein provided for the service of the motion." M.R.C.P. 25(a)(1). The language clearly requires service of the suggestion of death be made in the same manner that the rule mandates for service of the motion to substitute. The rule is unclear, however, as to which nonparties, if any, must be subjected to Rule 4 service of a suggestion of death. It is important that, in the case *sub judice*, Knesal's heirs did not open an estate for him and no estate existed until well after the motion to dismiss was filed by Knesal's attorneys. When the estate was opened, it was opened by Clark – not by Knesal's heirs.

¶13.    The Court dealt with the issue of service of a suggestion of death on a nonparty in ***Hurst v. Sw. Miss. Legal Servs. Corp.***, 610 So. 2d 374, 386 (Miss. 1992), *overruled on other grounds by* ***Rains v. Gardner***, 731 So. 2d 1192 (Miss. 1999). In ***Hurst***, one of the plaintiffs, Josie Connerly, died during litigation. ***Hurst***, 610 So. 2d at 385. Southwest, one of the defendants, promptly filed a suggestion of death on the record and served it on the attorney for the plaintiffs. ***Id.*** An executrix was named for Connerly's estate, and the plaintiff's attorney was retained to represent the estate. ***Id.*** Ninety-two days later, after no motion for substitution had been filed, Southwest moved to dismiss Connerly as a party. ***Id.*** The plaintiffs filed a motion for extension of time to file a substitution for Connerly's estate, which the trial court granted, allowing the estate to be substituted and denying Southwest's motion to dismiss Connerly as a party. ***Id.*** This Court held that the ninety-day period for substitution was never triggered because the executrix of Connerly's estate, an interested nonparty moving for substitution, was never served properly with the suggestion of death as a nonparty under Rule 4. ***Id.*** at 386.

7

¶14.    *Hurst* does not aid Clark, however, for the simple reason that in the instant case there existed no estate upon which or personal representative upon whom the suggestion of death could have been served. The record contains an affidavit from one of Knesal's attorneys, wherein he avers that Knesal's surviving family members had no desire to open an estate or to continue pursuing Knesal's claims against Clark. Well after the motion to dismiss was filed, Clark acted through counsel to open an estate adversely, but – again – the estate was not in existence during the relevant time period. No court possesses so much authority as to be able to command a party to serve a nonexistent person or entity.

¶15.    Our holding in the instant case comports with the recent holding of the Mississippi Court of Appeals in *Keller v. Bennett*, 103 So. 3d 747 (Miss. Ct. App. 2012).[1] Keller sued Bennett and Bennett's daughter Clara Larish after Bennett struck Keller while driving Larish's car. *Id.* at 749 (¶ 4). Bennett died while litigation was pending, and his counsel, who also represented Larish, filed a suggestion of death on the defendants' behalf. *Id.* Keller did not move to substitute within ninety days, and defendants' attorney moved to dismiss Bennett. *Id.* at 750 (¶ 5). Keller did not move for leave to file a motion for substitution until a year after the motion to dismiss had been filed. *Id.* at (¶ 6). The court denied the motion as untimely and granted the motion to dismiss Bennett. *Id.*

¶16.    On appeal, Keller argued the ninety-day period never began to run because the executor of Bennett's estate was never served under Rule 4 as a nonparty and Rule 25

---

[1] The mandate in *Keller* was issued on December 11, 2012, and, on January 11, 2013, the Court of Appeals dismissed the appellant's motion to recall the mandate and for additional time to file a motion for rehearing.

mandates service of such a nonparty. *Id.* at 751 (¶¶ 11-15). The Court of Appeals held that the plain language of Rule 25 does not mandate a particular category of nonparties that must be served with the suggestion of death to trigger the ninety-day period. *Id.* at 751-21 (¶ 16). "[I]nstead of judicially creating a category of non-parties that must be served in every case where death is formally suggested, we instead consider whose rights are being cut off by the ninety-day limit." *Id.* at 751 (¶ 13). The *Hurst* Court properly distinguished between parties, such as Clark in the case *sub judice*, and interested nonparties, such as the estate in *Hurst*. *Id.* at 751 (¶14). Because Keller – like Clark in the instant case – was a party, Rule 5 service on his attorney was sufficient to trigger the time period, and no Rule 4 service on any nonparty was necessary because no party's rights were affected. *Id.*

¶17. The case *sub judice* presents the same issue as to service of the suggestion of death as in *Keller*. The estate of Knesal had not been opened until Clark's counsel petitioned the chancery court on May 13, 2010 – more than one and a half years after Knesal's death. Knesal's successors had no interest in pursuing his claim. Moreover, Clark's rights regarding the motion for substitution were not affected by the failure to serve Knesal's successors. Accordingly, service was not mandatory, and the Rule 5 service executed upon Clark's attorney was sufficient to trigger the ninety-day time period. Clark himself was properly served through his attorney of record, and he fails to demonstrate any prejudice or harm resulting from the failure to serve any other person or entity.

> **2. *Whether the ninety-day time limit was triggered when the suggestion of death was filed in the name of Knesal rather than his successor by one of Knesal's attorneys of record who had not been retained to represent his successors or estate.***

9

¶18.  Clark argues that Knesal's attorney was not a proper representative of the decedent because, as a result of Knesal's death, he no longer had the authority to act on Knesal's behalf. Rule 25, however, places no limits on who may properly file the suggestion of death. Some courts and commentators have concluded that counsel for the decedent does not have the authority to make the suggestion of death.

> [T]he attorney for the deceased party may not make the statement noting the death since the attorney is not a party to the action and, since the attorney's authority to represent the deceased terminated on the death, the attorney is not a representative of the decedent of the sort contemplated in the rule.

7C Wright & Miller, *Federal Practice and Procedure* § 1955 (2008).

¶19.  However, the plain language of Rule 25 requires no authority to act on behalf of the decedent because there is no limitation in the Rule on who may file the suggestion of death. "[T]he death is suggested upon the record by service of a statement of the fact of the death. . . ." M.R.C.P. 25(a)(1). Since the rule is silent as to who may file the suggestion of death, an attorney may file the suggestion for a deceased client. The dissent's concern regarding the dismissal of Knesal's claims against Dr. Clark and intimation that the deceased Knesal was somehow betrayed by his defense attorneys have no foundation in the record. There is no evidence in the record that Knesal's heirs had any interest in continuing to pursue his claims against Dr. Clark. To the contrary, the record indicates the heirs had no interest in pursuing his claims. No heir or representative of Knesal's estate has appeared to protest the dismissal.

¶20.  The Second Circuit in ***Unicorn Tales*** came to this same conclusion. "[T]he text of [federal] Rule 25(a)(1) contains no such restriction on who may file the statement [of the fact

10

of death].” *Unicorn Tales*, 138 F.3d at 470. Again, in **Keller v. Bennett**, the Mississippi Court of Appeals held that “the express language of Rule 25(a)(1) does not restrict who may suggest death upon the record,” and held that the attorney for the decedent was permitted to suggest the death on the record. **Keller**, 103 So. 3d at 752 (¶ 20).

¶21. We are further persuaded by the fact that the sentence preceding the description of the suggestion of death in Rule 25(a)(1), discussing the procedure for filing a motion for substitution, is very specific about who may make such a motion. To explain in detail who may move for substitution, and then to remain silent as to who may file the suggestion of death, suggests the intent to leave the latter unrestricted. Accordingly, we affirm the trial court’s determination that Knesal’s attorney could file the suggestion of death on the record.

## II. Whether Knesal’s attorney had standing to file a motion to dismiss.

¶22. Eight months after the suggestion of death was filed, one of Knesal’s attorneys moved to dismiss Knesal as a party and to dismiss the case. Clark argues this was done long after any authority existed between Knesal and his attorneys, and that Knesal’s counsel had no standing or authority to make the motion to dismiss. However, Rule 25 does not require a motion to dismiss to be filed, nor does it limit who may file such a motion if one is filed.

¶23. Accordingly, the trial court had the authority to dismiss the case. The rule states that “[t]he action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record.” M.R.C.P. 25(a)(1). Given that the dismissal is not contingent upon the filing of a motion, the court acted in accordance with Rule 25 when it dismissed Knesal.

11

**III. Whether the trial court erred in holding that the Rule 25(a) dismissal was mandatory after the ninety-day time period for moving for substitution had lapsed.**

¶24. In its order granting the motion to dismiss, the trial court stated:

> Dr. Clark also argues that "as stated in the comments to the Rule, dismissal is not mandatory." Upon review of the language of Mississippi Rule of Civil Procedure 25 and the comments to Rule 25, the Court finds that Rule 25 provides that "the action shall be dismissed without prejudice as to the deceased party" if no motion for substitution is made within ninety days, and the Comment to Rule 25 clearly says that "as the rule states, the action will be dismissed without prejudice if a motion for substitution is not made within ninety days of the suggestion of death on the record."

¶25. The order then granted the motion to dismiss without addressing Clark's claims of excusable neglect or extension of time. Clark argues that the trial court erred by determining that the language of Rule 25 and its comment mandated dismissal after the lapse of the ninety-day period.

¶26. The trial court's order did not address the second half of the paragraph quoted in the Comment to Rule 25, which states,

> The general provisions of MRCP 6(b) apply to motions to substitute; accordingly, . . . the court may allow substitution to be made after the expiration of the ninety day period on a showing that the failure to act earlier was the result of excusable neglect. MRCP 6(b)(2). See 7A Wright & Miller, Federal Practice and Procedure, Civil §§ 1951, 1955 (1972).

M.R.C.P. 25 cmt. Rule 6(b)(2) states that when an act is required to be done within a specific time, a court has the discretion "upon motion made after the expiration of the specified period [to] permit the act to be done where failure to act was the result of excusable neglect." The comment to Rule 25, along with the language of Rule 6, indicates that a motion for

12

substitution may be granted after the ninety-day period only upon a showing of excusable neglect.

¶27. At the hearing, the trial judge evidenced his understanding that the rule did not mandate dismissal if excusable neglect was found. The following exchange between the judge and one of Knesal's attorneys demonstrates that he considered whether excusable neglect permitted a late filing of the motion to substitute.

**Judge:** . . . Rule 25 says it shall be [dismissed], but *if I find there's excusable neglect*, doesn't that change it from shall to may?

**Corlew:** . . . The comments to Rule 25, which have been approved, state that an extension can be granted for excusable neglect. So if you look at the comments and roll that in, then, yes, sir, I do agree with you.

**Judge:** So it just is *waiting on a finding from me if there was excusable neglect* or not?

**Corlew:** If you use that rationale, yes, Your Honor.

¶28. The Court applies an abuse of discretion standard to a trial court's findings of fact concerning the existence or lack of good cause or excusable neglect. ***Long v. Mem'l Hosp. at Gulfport***, 969 So. 2d 35, 38 (¶ 5) (Miss. 2007). We will reverse the trial court's factual determination only when it is not supported by substantial evidence. ***Id***. To the extent that the trial court's excusable neglect determination involves the interpretation of legal principles, we will conduct a *de novo* review. ***Id***.

¶29. This Court has not previously defined what constitutes excusable neglect in the context of Rule 25, but we have addressed it in the context of Rule 4. As we have held, simple inadvertence, mistake of counsel, or ignorance of the rules usually does not constitute

13

excusable neglect. ***Stutts v. Miller***, 37 So. 3d 1, 4 (¶ 9) (Miss. 2010); ***Holmes v. Coast Transit Auth.***, 815 So. 2d 1183, 1186 (¶ 11) (Miss. 2002). Excusable neglect is "a very strict standard." ***Webster v. Webster***, 834 So. 2d 26, 29 (¶ 11) (Miss. 2002). Good cause and excusable neglect have been linked inexorably to one another, as a showing of good cause has been said to require at least as much as a showing of excusable neglect. ***Id.*** at 28 (¶ 4). In the context of appeals from state agencies, we have written, "Good cause is established when there is sufficient evidence to show that a party failed to receive the mailing due to delays in the mail or because of an act beyond the party's control." Several courts have held that a mistakes in handling the mail or otherwise do not constitute excusable neglect. ***Andrew Bihl Sons, Inc. v. Trembly***, 67 Ohio App. 664, 667, 588 N.E.2d 172, 173 (1990); ***Airline Pilots in Service of Executive Airlines, Inc., Counsel No. 2, Union of Prof. Airmen v. Executive Airlines, Inc***, 569 F.2d 1174 (1st Cir. 1978); ***Pasquale v. Finch***, 418 F.2d 627 (1st Cir. 1969).

¶30. At the time the suggestion of death was served in the instant case, counsel for Clark was on a lengthy sabbatical. Although he appears to have put in place a system for having his mail forwarded to him, in this instance, the system failed. Clark was able to plead his case for excusable neglect fully at the hearing on the motion for substitution and dismissal. It is clear from the hearing transcript that the trial court considered whether Clark's failure to file a timely motion to substitute was the result of excusable neglect. Based on the record and our prior pronouncements concerning excusable neglect and good cause, we cannot conclude the trial court abused its discretion in not finding excusable neglect.

**Conclusion**

¶31. We find that the plain language of Rule 25 permitted Knesal's attorney to file to suggestion of death without naming Knesal's successors or representatives. Similarly, there is no requirement under the rule that a motion to dismiss be filed at all prior to dismissal, so the fact that a motion to dismiss was filed by Knesal's attorneys does not provide grounds to overturn the trial court's decision. We further find that the trial court did not abuse its discretion when it did not find Clark's delay in responding to the suggestion of death resulted from excusable neglect. Therefore, the decision of the trial court is affirmed.

¶32. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, JJ.**

**KITCHENS, JUSTICE, DISSENTING:**

¶33. I disagree with the majority's holding that the attorneys for William Knesal had the authority to file a suggestion of death or a motion to dismiss on behalf of Knesal. The majority gives short shrift to the fact that Knesal was the original plaintiff in this action, and that he had maintained his claims against Clark for the entirety of the litigation. Because I find that Knesal's attorneys acted without authority to dismiss an action that Knesal clearly believed was justified and which Knesal showed every intention of pursuing, I respectfully dissent.

¶34. It is not clear what, if any, authority or standing the Bryan Nelson lawyers – Castigliola and Corlew – had to file the suggestion of death as it affected Knesal's claim against Clark, the filing of which started the ticking of the 90-day clock, during which period the filing of a motion for substitution would have been necessary to avoid the dismissal of Knesal's case. It goes without saying that the deceased Mr. Knesal did not authorize or direct these lawyers

15

to file the suggestion of his death. At that time, Knesal's estate had not been opened; so, there was no personal representative (executor or administrator) to direct or authorize the filing of the suggestion of death.

¶35. Today, this Court, for the first time, determines who may properly file a suggestion of death, holding that *anyone* may do so and that the suggestion need not identify or be served upon the successors or representatives of the decedent. Certainly, there are many situations in which this rule would not be prejudicial to anyone involved. It is ironic, then, that the majority chooses to apply such a rule in a situation in which the rights and interests of a decedent are so clearly prejudiced. Mississippi Rule of Civil Procedure 25 requires that the action must be "dismissed *without prejudice* as to the deceased party . . . ." M.R.C.P. 25(a) (emphasis added). While the dismissal clearly benefitted the insurance company that had hired Knesal's attorneys by making Clark's counterclaim go away, it was patently prejudicial to Knesal in at least two significant respects: 1) it extinguished the $89,337 claim that had prompted him to file the suit in the first place, then maintain it for twelve years, and 2) even assuming that the claim could be refiled and litigated, the case lost its position on the crowded docket of the Harrison County Circuit Court. Thus, Rule 25's requirement that dismissal, if any, be accomplished without prejudice to the deceased party was not satisfied.

¶36. This Court provided a thorough analysis of an attorney's duties to an insured when the attorney was hired by the insurer in ***Hartford Accident & Indemnity Co. v. Foster.*** 528 So. 2d 255 (Miss. 1988). The Court found that there was "no question" that the lawyer owed a duty of "absolute loyalty" to the interests of the insured. ***Id.*** at 268. When the interests of an insured and insurer are in conflict, it is the lawyer's duty to preserve the interests of both

16

clients, and the lawyer "certainly is prohibited from taking any action which may injure either client." *Id.* at 270.

¶37. By fully dismissing Knesal's case, including the original cause of action that he himself had gone to the trouble and expense of filing and litigating, his attorneys appear to have disregarded Knesal's interest in pursuing his claim against Clark, in essence "throwing out the baby with the bath water" in order to benefit their other client, an insurance company. At the time these actions were taken, the only client Castigliola and Corlew had that was capable of giving them instruction or authorization to take such action was the only one that would benefit from it: the insurance company. Being dead, Mr. Knesal could neither give nor withhold his consent to this strategy, and his administrator had not yet been appointed. While the insurance policy may very well have authorized Castigliola and Corlew to proceed in the manner they did on behalf of the insurance carrier, such action clearly was prejudicial to the interest of Knesal in the prosecution of his claim against Clark, which he steadfastly had pursued during his lifetime. In my view, these lawyers had no standing or authority to effect the dismissal of that claim, notwithstanding that Knesal did benefit, along with the carrier, from the dismissal of Clark's counterclaim.

¶38. Tim Holleman was the attorney who represented Knesal in his prosecution of his claims against Clark. The record does not indicate that he took any part in the proceedings concerning the suggestion of death and dismissal motion. Interestingly, Scott Corlew's Certificate of Service attached to the Suggestion of Death indicates that a copy was sent to Mr. Williams as attorney for Clark, to two other lawyers who represented two of the third-party defendants, to Harry Allen as attorney for Hancock Bank, and, finally, to Tim C.

17

Holloman [sic], without listing him as anyone's attorney. It cannot be determined from the record whether Holleman had become inactive in the case, or, more likely, whether he recognized that, with Mr. Knesal in his grave and without an executor or administrator, he was a lawyer without a client. Similarly, when Castigliola filed the motion to dismiss more than eight months later, he certified that he had copied Holleman (spelled correctly this time), but did not note that Holleman represented any party. Significantly, perhaps, both Corlew in his certificate and Castigliola in his motion to dismiss identified themselves as "attorney for the *Plaintiff*/Counter-Defendant, William E. Knesal. (Emphasis added.) So, they appear to have recognized that they had assumed the role and responsibility of acting for the dead Mr. Knesal in his capacity as *plaintiff* in the case, and they seemed perfectly comfortable in effecting the dismissal of a $90,000 claim that no one had authorized them to handle.

¶39.    William Knesal was clearly committed to this lawsuit. He hired a lawyer, instituted the action against Clark and maintained it for the last twelve years of his life, never giving any indication that he was willing for his original claim against Clark to be dismissed. Castigliola and Corlew have never contended that Knesal instructed or authorized them to dismiss his claim against Clark, which involved a substantial amount of money that Knesal clearly had believed he was entitled to collect. The filing of the suggestion of death and the subsequent dismissal of the suit clearly prejudiced Knesal's interest in pursuing what he thought to be a valid claim. The attorneys who filed it had no authority to do so, and were actively operating against their deceased client's interests. After Knesal died, his attorneys had a duty of loyalty to protect his interests, and instead acted to protect the interests of another client. Because I find that Knesal's attorneys had no authority to file the suggestion of death, and that the rules

18

of legal ethics prevented them from doing so, I would reverse the dismissal of the claims between Clark and Knesal and remand for further proceedings. Therefore, I respectfully dissent.

**CHANDLER AND KING, JJ., JOIN THIS OPINION.**