COLEMAN, Justice,
for the Court:
¶ 1. The instant case presents a difficult factual situation and outcome. In the wake of an attorney’s family tragedy, the defendants missed their deadline for filing their notice of appeal. The chancellor denied the defendants’ request to extend the time to file the notice of appeal. We discern no abuse of discretion by the chancellor and affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Originating in the Chancery Court of Pike County, the underlying case involves a land dispute among family members. After several years of litigation, the chancellor rendered a final judgment on June 20, 2012. David and Jené Nunnery then retained Attorney Jeffrey A. Varas, who promptly filed a motion for new trial. On October 1, 2013 — fifteen months after the motion was filed — the chancellor entered an order denying the motion.
¶ 3. On October 22, 2013, Varas learned that his brother had been in a serious car accident and was in a coma in the intensive care unit (“ICU”) at a Greenville, South Carolina, hospital. For the next four weeks, Varas traveled back and forth from Mississippi to South Carolina to be with his family and to deal with what Varas described as “end-of-life medical, financial and ¿motional decisions” concerning his brother’s condition.
¶ 4. Varas is a solo practitioner whose legal secretary is his wife, so when the family tragedy struck, Varas was unable to delegate his work responsibilities to anyone else. Consequently, he missed filing the notice of appeal in the instant case by the October 31, 2013, deadline.
¶ 5. Varas and his family made the decision to remove his brother from life support on November 9, 2013. His brother soon passed away and a funeral was held on November 16, 2013.
¶6. After his brother’s funeral, Varas returned to work and, realizing he had missed the deadline to file the notice of appeal, filed a motion on behalf of his clients for an extension of time to file a notice of appeal. Within this motion, Var-as argued as follows:
During the time for appeal, a close family member of the undersigned attorney was involved in a serious car wreck in South Carolina, was in a comma [sic ] in intensive care, underwent surgical procedures, and was placed on life support. These unfortunate events extended for a period of four (4) weeks requiring the *750 undersigned attorney’s regular attendance at the Greenville, South Carolina hospital. On November 9, 2013, the family removed life support and on November 16[, 2013] the funeral was held.
The good-cause excusable neglect for the requested extension is based upon the above stated circumstances which kept the undersigned counsel out of the office for extended periods of time during the past four weeks. The undersigned is a sole [sic] practitioner with his wife as secretary and who traveled with the undersigned. Such excusable neglect was the result of unforeseen circumstances beyond his control and which interfered with the timely filing of a notice of appeal.
¶ 7. At the hearing on Varas’s motion, Varas explained that “everything went to heck in a hand basket during that time, Judge,” and “I was in a semi-state of shock.” Varas went on to admit “I was not paying attention, nor did I feel like I needed to pay attention to the demands of the law practice during that time.” Varas further characterized the situation as “like being in the twilight zone to be in the intensive care unit like that for that number of weeks.” Varas. additionally described how during this time he “became the patriarch [of his family] and ... had to make the decision whether to let [his] brother pass away or not.”
¶ 8. Paul Edward Nunnery and Glenda Nunnery Lord (“Paul and Glenda”) opposed the motion and argued that the circumstances surrounding Varas’s brother’s accident, while terrible, did not rise to'the level of “excusable neglect.” At the close of the hearing, the chancellor ruled from the bench that she was going to deny Varas’s motion. In explaining her decision to deny the motion, the chancellor reasoned as follows:
... the Court is indeed sympathetic to Mr. Varas and his personal situation. Likewise, the Court is indeed sympathetic to his client who is involved in a very distasteful, contentious family litigation which has prolonged through this Court for several years.
And having stated that sympathy for both counsel and his client, the Court must go forward to relate that there are other parties’ interest to be considered. The Court takes note that so long as litigation is pending it is a chief detractor from the sanity, the peace that a family should be entitled to.
The plaintiffs in this case, which this Court has tried, were other family members of the proposed appellant. Two of which were his extremely elderly parents.
This Court went to great lengths to allow the litigants to present their cases. There were numerous motions, hearings, and a very extended trial, after which the Court diligently undertook to render a very detailed ruling, and that ruling was entered by the Court on June the 20th of 2012....
And whereas the Court has the most extreme sympathy for counsel and for his personal life situation which occurred in the waning days that this case could have been appealed to the Supreme Court, this Court does not find, considering all things, that this is an appropriate case for extending the time for leave to appeal the case.
¶ 9. Following this hearing, the chancellor entered an order on January 30, 2014, reflecting her ruling from the bench. In that order, the chancellor specifically found:
The Defendants have not met their burden of showing that their failure to file a notice of appeal within the time permitted by Rule 4 of the Mississippi Rules of *751 Appellate Procedure was the result of excusable neglect.
¶ 10. Varas appealed the chancellor’s order and the Court of Appeals affirmed with sharp division as to the reasoning. Nunnery v. Nunnery, 195 So.3d 809, 2015 WL 4485648 (Miss.Ct.App. July 21, 2015). Presiding Judge Irving, joined by three judges, determined that David and Jené had failed to demonstrate excusable neglect. Id. at 813-14, 2015 WL 4485648 at *4. Judge Maxwell, joined by three judges, concurred in part and result with the majority but reasoned that, while David and Jené had met their burden in showing excusable neglect, he could not conclude that the chancellor had abused her. discretion in denying the motion, because Varas’s “circumstances were outweighed by the prejudice to the other side that would have arisen if the requested extension had been granted.”
¶ 11. We granted David and Jené’s petition for a writ of certiorari to address whether the chancellor erred in finding that Varas had failed to show “excusable neglect,” and whether, as a result, the chancellor erred in denying their motion for an extension of time to file their notice of appeal. We affirm.
STANDARD OF REVIEW
¶12. We review excusable-ne-gleet determinations from our trial courts with a bifurcated standard. The Court has set forth the applicable standard of review as follows:
The Court applies an abuse of discretion standard to a trial court’s findings of fact concerning the existence or lack of good cause or excusable neglect. Long v. Mem’l Hosp. at Gulfport, 969 So.2d 35, 38 (¶ 5) (Miss.2007). We will reverse the trial court’s factual determination only when it is not supported by substantial evidence. Id. To the extent that the trial court’s excusable neglect determination involves the intérpreta.tion of legal principles, we will conduct a de novo review. Id.
Clark v. Knesal, 113 So.3d 531, 539 (¶28) (Miss.2013) (emphasis added). We have elsewhere described the standard of review:
This.Court leaves to the discretion of the trial court the finding of fact. on. the existence of good cause or excusable neglect for delay in serving process under Rule 4(h). Where such discretion is abused or is not supported by substantial evidence, this (-court will reverse. However, where the trial court’s judgment involves the interpretation of legal principles, this court will conduct a de novo, or.plenary, review of its interpretation, and reverse where it finds the trial court in error. Bennett v. McCaffrey, 937 So.2d 11, 14 (Miss.2006). See also Montgomery v. SmithKline Beecham, 910 So.2d 541, 544-45 (Miss.2005); Holmes v. Coast Transit Auth., 815 So.2d 1183, 1185 (Miss.2002).
Long v. Mem’l Hosp. at Gulfport, 969 So.2d 35, 38 (¶ 5) (Miss.2007) (emphasis added). Two potentially applicable standards of review exist — abuse of discretion and plenary. When the trial court’s decision rests on “precepts of law,” the standard is plenary.. Bennett v. McCaffrey, 937 So.2d 11, 14 (18) (Miss.2006). On the other hand, when — as is the case today— the trial judge’s decision rests upon an examination of facts, we review for abuse of discretion and to ensure the decision is supported by substantial evidence. Id. “Which standard to apply is a decision to be made on an ad hoc basis.” Id. (citing Rains v. Gardner, 731 So.2d 1192, 1198 (Miss.1999)). The dissent’s insistence that what “constitutes ‘excusable neglect’ is a question of law, which we review de novo,” *752 (Dis. Op. at ¶24), is an oversimplification and not accurate.
¶ 13. Black’s Law Dictionary defines “abuse of discretion” as “An appellate court’s standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.” Abuse of Discretion, Black’s Law Dictionary (10th ed.2014). The reviewing court should not reverse a discretionary finding by the lower court unless it comes to a “definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.” Plaxico v. Michael, 735 So.2d 1036, 1039 (¶ 11) (Miss.1999) (quoting Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990)).
When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.
Burkett v. Burkett, 537 So.2d 443, 446 (Miss.1989). In a review for abuse of discretion, the appellate court will “consider whether the decision was one of those several reasonable ones which could have been made.” Id. “A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles.” Ferguson v. Univ. of Miss. Med. Ctr., 179 So.3d 1060, 1067 (¶ 31) (Miss.2015).
ANALYSIS
¶ 14. Our appellate procedural rules require that a “notice of appeal ... shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from.” M.R.A.P. 4(a). And a party in need of additional time to file the notice of appeal must turn to Rule 4(g) of the Mississippi Rules of Appellate Procedure, which allows additional time upon a finding of “excusable neglect.”
¶ 15. An excusable-neglect determination “is at bottom an equitable one, taking account of all relevant circumstances surrounding the party’s omission.” Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Pioneer Court then adopted the following four-part, excusable-neglect test: (1) “the danger of prejudice to the [non-movant],” (2) “the length of the delay and its potential impact on judicial proceedings,” (3) “the reason for the delay, including whether it was within the reasonable control of the movant, and” (4) “whether the movant acted in good faith.” Pioneer Inv. Serv. Co., 507 U.S. at 395, 113 S.Ct. 1489. The four-prong Pioneer test has been applied by many other courts in analyzing similar motions (see, e.g., U.S. ex rel. King v. Univ. of Tex., 544 Fed. App’x 490 (5th Cir.2013); Treasurer, Trustees of Drury Indus. Inc. Health Care Plan & Trust v. Goding, 692 F.3d 888 (8th Cir.2012); Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812 (5th Cir.2007); Locke v. Sun-Trust Bank, 484 F.3d 1343 (11th Cir.2007); Pincay v. Andrews, 389 F.3d 853 (9th Cir.2004); Local Union No. 12004, United Steelworkers of Am. v. Mass., 377 F.3d 64 (1st Cir.2004); In re Schultz, 254 B.R. 149 (6th Cir. BAP 2000); San Juan City College, Inc. v. U.S., 75 Fed.Cl. 540 (Fed.Cl.2007); Active Glass Corp. v. Architectural & Ornamental Iron Workers Local Union 580, 899 F.Supp. 1228 (S.D.N.Y.1995)) and we hold that it is an appropriate guide for our courts.
*753 ¶ 16. In the case sub judice, the chancery court entered the order for which an appeal is sought, an order denying a motion for a new trial, on October 1, 2013. The thirty-day appeal period therefore ended on October 31, 2013. The defendants below, appellees here, filed their motion for an extension of time to file their notice of appeal on November 18, 2013. From her bench ruling, it is clear that the chancellor rendered a factually driven decision that addressed at' least three of the Pioneer factors — danger of prejudice, length of delay and its impact on the proceedings, and the reason for the delay. She noted her sympathy for Varas, the attorney for the defendants who'had suffered a death in the family, but she also weighed the interests of the other parties to the litigation. She noted that two of the plaintiffs are elderly and remarked on the length of the trial and pretrial proceedings. She noted that another attorney had tried the case for Varas’s clients. She noted that Varas had filed a motion for a new trial on June 29, 2012, but did not call up the motion for a hearing. After the motion for a new trial stayed open for fifteen months, and Varas failed to obtain or take any steps to obtain a hearing on the motion, the chancellor entered an order denying it, as noted above, on October 1,2013.
¶ 17. Without citation to authority, the‘dissent contends that the trial judge erred by considering the fifteen-month delay caused by the defendants’ failure to obtain a hearing on their motion for new trial, rather than considering only the shorter time period between the expiration of the appeal deadline and the filing of the motion for an extension of time. (Dis. Op. at ¶¶ 36-37). Equity is not so tightly constrained. Again, an excusable-neglect determination “is at bottom an equitable one, taking account of all relevant circumstances surrounding the party’s omission.” Pioneer Inv. Serv. Co., 507 U.S. at 395, 113 S.Ct. 1489 (emphasis added). We have noted, “A- court of equity considers results rather than the means by which they are obtained.” Hall v. Bowman, 749 So.2d 182, 184 (¶ 10) (Miss.1999). Also, “One of. .the. procedural maxims of equity is that equity looks to the intent, and will regard substance rather than form.” Kemp v. Atlas Fertilizer & Chem. Co., 199 So.2d 52, 57 (Miss.1967). The defendant in the instant case did nothing for fifteen months to call his motion for a new trial for a hearing. The chancellor indicated in her order that she had ruled on the motion only because the clerk of the court had informed her the motion was still open. Given the chancellor’s findings regarding the difficult and straining nature of the litigation below, she did not err in considering other delay caused by the defendants’ inaction. “[E]quity aids the vigilant and not those who slumber on their rights.” Matter of Last Will and Testament of Winding v. Estate of Winding, 783 So.2d 707, 711 (¶ 15) (Miss.2001) (citing In re Estate of Davis, 510 So.2d 798, 800 (Miss.1987)).
¶ 18. We again note the equitable nature of an excusable neglect determination, and we will not fault the chancellor for considering the deleterious effect on, the parties of all of the delay — including the fifteen-month delay caused by -the defendants’ earlier, unexplained inaction. In In re Schultz, 254 B.R. 149 (6th Cir. BAP 2000), the case the dissent considers “the most persuasive and directly applicable,” (Dis. Op. at ¶ 30), the Sixth Circuit focused heavily on the reason for delay prong. Schultz, 254 B.R. at 153. With respect, we find little of use in Schultz, because it does not contemplate the circumstances faced by the chancellor in the ease sub judice, e.g., the effects on the parties caused by a long delay that resulted squarely from a *754 lack of diligence that predated any events that form the basis for the assertion of excusable neglect. In other words, we cannot know-what the Schultz Court would have held had the party attempting to show excusable neglect there also caused well over a year of delay in litigation with elderly litigants who had borne the weight of trying litigation.
' ¶ 19. In short, the chancellor in the case sub judice rendered a decision from the bench that considered at least three of the Pioneer factors. In truth, the chancellor’s expression :of ■ sympathy for Varas could be read as a finding that the defendants did not act hr bad faith. If so, she considered all four of the factors. In his dissent, Presiding Justice Dickinson touts his own, certainly lengthier and more detailed analysis as better than that of the trial judge, and he goes through great lengths to1 explain why he would reach a different result. As explained above, such is not our task when we review for an abuse of discretion. There was ho error of law, and the chancellor’s fact-based determination does not leave us with the definite and firm conviction that she erred.
¶20. We pause before closing to address’ the dissent’s striking assertion that the fifteen-month delay caused by the defendants’ failure to seek a ruling on their motion for a new trial should actually bé weighed' against the plaintiffs. (Dis. Op, at ¶ 37). The dissent would hold that the delay shows the plaintiffs were not prejudiced because, if they were being prejudiced, surely they would have sought ’a ruling on the ‘motion themsélves. Mississippi law arid practice clearly put the onus on the movant to obtain a ruling on a pending motion. Billiot v. State, 454 So.2d 445, 456 (Miss.1984). We cannot effectively agree to penalize parties who had no reason to know they were responsible for calling up the opposing party’s motion and, that because they did not do so, will face the Court using against them a failure that belongs squarely at the feet of their opponents.
¶ 21. We affirm the judgments of the Pike County Chancery Court and the Court of Appeals.
¶ 22. AFFIRMED.
RANDOLPH, P.J., LAMAR AND BEAM, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C. J., AND KING, J. KITCHENS AND MAXWELL, JJ., NOT PARTICIPATING.