# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00135-COA

VICTORIA YORK, INDIVIDUALLY AND ON
BEHALF OF THE WRONGFUL DEATH
BENEFICIARIES OF BENNETT YORK, JR.,
DECEASED

APPELLANT

v.

DR. BENJAMIN ROOT, JR. AND MISSISSIPPI
NEUROPSYCHIATRIC CLINIC PLLC

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 01/14/2020 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BRADLEY S. CLANTON |
| | MEGAN MARIAH PATRICK |
| ATTORNEYS FOR APPELLEES: | LYNDA CLOWER CARTER |
| | ASHLEY W. GUNN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 10/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Victoria York sued Dr. Benjamin Root Jr., a psychiatrist, for medical malpractice and wrongful death, alleging that Root's negligence caused her husband's suicide.[1]  After the circuit court granted Root's motion for summary judgment, York failed to file a timely notice of appeal.  After the deadline for an appeal had passed, York requested an extension of time

---

[1] York also sued the clinic at which Dr. Root practices, Mississippi Neuropsychiatric Clinic PLLC.  For simplicity, we refer to Root and the clinic collectively as "Root."

to appeal, but the circuit court denied her motion. York now appeals the denial of her request for an extension. We find no error or abuse of discretion and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In August 2013, York's husband died by suicide. In August 2015, York sued Root in the Madison County Circuit Court, alleging that Root's negligence caused her husband's suicide. In 2018, Root filed a motion for summary judgment, arguing that York's claim failed as a matter of law under *Truddle v. Baptist Memorial Hospital-DeSoto Inc.*, 150 So. 3d 692 (Miss. 2014).[2] The circuit court granted Root's motion on July 30, 2019. Thus, York had until August 29, 2019, to file a notice of appeal. M.R.A.P. 4(a). York did not do so.

¶3.     On September 5, both of York's attorneys, Bradley Clanton and Laura McKee Zouein, attempted to call one of Root's attorneys, Lynda Carter, and left messages for Carter. Although Clanton and Zouein were advised that Carter was unavailable, neither of them asked to speak to Carter's colleague and co-counsel at the same law firm. The next day, Carter returned Clanton's and Zouein's messages and reached Clanton first. Clanton asked Carter to consent to an out-of-time appeal, but Carter did not agree.[3]

---

[2] *Truddle* held that "to sustain a cause of action for a suicide," "the plaintiff must show that the defendant committed an intentional act that led to an irresistible impulse to commit suicide" or that the defendant "owed the [decedent] a duty of care" because the decedent was a patient in the custody and control of the defendant. *Id.* at 697-98 (¶¶19-21).

[3] Although York asked Root to consent to an extension of time, the Rules of Appellate Procedure do not provide for an extension by consent. Rather, a motion for an extension that is filed after the deadline for filing a notice of appeal "shall be granted *only* upon a showing of excusable neglect." M.R.A.P. 4(g) (emphasis added).

2

¶4. On September 18, 2019, York filed a motion for an extension of time to appeal and a supporting affidavit from Clanton. Clanton stated that he had been diagnosed with chronic pancreatitis in 2015 and had been hospitalized a number of times since as a result of flare-ups. He stated that he again began experiencing symptoms of this condition around August 8, 2019, and that his doctor prescribed powerful medications and directed him to maintain as much bed rest as possible, which made it "very difficult to work." He stated that his condition did not improve for three weeks and then worsened on August 28, which caused him to go to the emergency room in the early morning hours of August 29. He stated that he was released from the hospital on September 1 and was prescribed more medications, which caused him to be heavily sedated for several days after his release. He argued that his illness established "excusable neglect" for his failure to file a notice of appeal and entitled York to an out-of-time appeal. Clanton's affidavit did not mention his co-counsel, Zouein. Nor did Zouein file an affidavit of her own. York's motion mentioned Zouein only in a footnote, stating, "The other attorney listed on this case as representing [York], Laura McKee Zouein, had ceased any active involvement in the case at that time. The undersigned [(i.e., Clanton)] is a solo practitioner, with no associate, paralegal, or other employee who could have filed the notice of appeal on my behalf."

¶5. Root filed a response to York's motion that detailed a history of missed deadlines and delay by York and her attorneys throughout discovery and briefing on the summary judgment motion. Root also noted that York did not file her motion for an extension of time until

twenty days after the deadline for filing a notice of appeal. Root further noted that York's assertion that Zouein "had ceased any active involvement in the case" was not supported by the record or any sworn affidavit. Clanton had previously filed a motion in which he stated that Zouein entered an appearance precisely so that she could assist him during his "continuing and chronic illness." Moreover, Zouein appeared at the summary judgment hearing, she received electronic notice of the court's order granting summary judgment, and after she and Clanton missed the deadline to file a notice of appeal, she called Root's counsel to ask for consent to an extension.

¶6. Root further argued that Clanton could have filed a notice of appeal despite his illness. Root noted that Clanton admitted that he was able to work from the time summary judgment was granted on July 30, 2019, until August 28, 2019, although he maintained that after August 8 it was "very difficult to work." Moreover, Root showed that Clanton had actually signed and filed a complaint and civil cover sheet in a personal injury case in the Harrison County Circuit Court on August 23, 2019. In addition, although York's motion had asserted that Clanton was "a solo practitioner, with no associate, paralegal, or other employee who could have filed the notice of appeal," Clanton signed the Harrison County complaint as an attorney with Kirkendall Dwyer LLP, a Texas-based law firm with offices in Mississippi and other states. In the signature block of the Harrison County complaint, Clanton listed his email address as bclanton@kirkendalldwyer.com.

¶7. In a reply memorandum, York again asserted that Zouein was "no longer involved in

4

the present matter"—although she was still counsel of record and had never filed a motion to withdraw. York also argued that the fact that Clanton "was able to file a complaint in another case in Harrison County is of no consequence to the present case" because Clanton "did not have the ability to draft and file a notice of appeal in this case due to his illness." Finally, York continued to assert that Clanton was "a solo practitioner with no additional aid to assist him in filings or on cases." Clanton did not explain why he had signed the Harrison County complaint as an attorney with a multi-state law firm.[4]

¶8. Following a hearing, the circuit court found that York had failed to meet her burden of establishing "excusable neglect" and denied her motion for an extension of time to appeal. *See* M.R.A.P. 4(g). York subsequently filed a notice of appeal. On appeal, she argues that the circuit court abused its discretion by denying her motion.

## DISCUSSION

¶9. "Filing a notice [of appeal] is a simple act, and a party must do all it could reasonably be expected to do to perfect the appeal in a timely fashion." *Schmitt v. Capers (In re Est. of Ware)*, 573 So. 2d 773, 775 (Miss. 1990). When a party requests an extension of time to appeal after the deadline for filing a notice of appeal has already passed, the extension "shall be granted only upon a showing of excusable neglect." M.R.A.P. 4(g). "Excusable neglect

---

[4] At the subsequent hearing on the motion, Clanton stated, "I was hired as local counsel in that case for a Texas law firm. They drafted the complaint. All I did was look at it and make sure it was in the right form, got the attorney admitted pro hac vice. All I did was help them file that complaint. That was it."

is a very strict standard." *Almasri v. Hyde-Smith*, 246 So. 3d 84, 88 (¶17) (Miss. Ct. App. 2018) (brackets omitted) (quoting *Webster v. Webster*, 834 So. 2d 26, 29 (¶11) (Miss. 2002)). Moreover, the party seeking an extension of time bears the burden of showing excusable neglect. *Id.* at (¶14); *accord In re Est. of Ware*, 573 So. 2d at 775.

¶10.    Our Supreme Court has identified four factors that may be relevant to a determination of excusable neglect: "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Nunnery v. Nunnery*, 195 So. 3d 747, 752 (¶15) (Miss. 2016) (brackets and quotation marks omitted).  However, a trial court is not required to address each of the "*Nunnery* factors" in its judgment or "delineate in detail the reasons for denying [such a] motion." *Palmer ex rel. Est. of Moore v. Clark Clinic Inc.*, 271 So. 3d 680, 683 (¶10) (Miss. Ct. App. 2018), *cert. denied*, 268 So. 3d 1281 (Miss. 2019).

¶11.    "To the extent that the trial court's excusable-neglect determination involves the determination of legal principles, we will conduct a de novo review." *Almasri*, 246 So. 3d at 88 (¶15); *see also Nunnery*, 195 So. 3d at 751 (¶12); *Palmer*, 271 So. 3d at 682 (¶5). However, "when . . . the trial judge's decision rests upon an examination of facts, we review for abuse of discretion and to ensure the decision is supported by substantial evidence." *Nunnery*, 195 So. 3d at 751 (¶12).  That is, we apply "an abuse of discretion standard to a trial court's findings of fact concerning the existence or lack of . . . excusable neglect." *Id.*

6

(quoting *Clark v. Knesal*, 113 So. 3d 531, 539 (¶28) (Miss. 2013)). This standard of review "leaves to the discretion of the trial court the finding of fact on the existence of . . . excusable neglect." *Id.* (emphasis omitted) (quoting *Long v. Mem'l Hosp. at Gulfport*, 969 So. 2d 35, 38 (¶5) (Miss. 2007)).

¶12. The Supreme Court has stated that an "abuse of discretion" is "a decision that is . . . grossly unsound, unreasonable, illegal, or unsupported by the evidence." *Id.* at 752 (¶13) (quoting *Abuse of Discretion*, Black's Law Dictionary (10th ed. 2014)). Under this standard of review, we may not reverse unless we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.* (quotation marks omitted). The Supreme Court has also stated,

> When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.

*Id.* (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss.1989)).

¶13. In *Nunnery*, the Supreme Court affirmed a chancellor's finding that a party seeking an extension failed to establish excusable neglect. *Id.* at 751 (¶11). In that case, a chancellor denied a motion for a new trial in a land dispute on October 1, 2013. *Id.* at 749 (¶2). On October 22, Jeffrey Varas, a solo practitioner who represented the would-be appellants in the case, learned that his brother had been in a car accident and was in intensive care at a South Carolina hospital. *Id.* at (¶3). "For the next four weeks, Varas traveled back and forth from

7

Mississippi to South Carolina to be with his family and to deal with . . . end-of-life medical, financial and emotional decisions concerning his brother's condition." *Id.* (quotation marks omitted). During this time, Varas missed the October 31 deadline for filing a notice of appeal. *Id.* at (¶4). Varas's brother was removed from life support on November 9, and his funeral was held on November 16. *Id.* at (¶5). Upon returning home, Varas realized that he had missed the deadline to appeal and filed a motion for an extension of time on November 18. *Id.* at 749, 753 (¶¶6, 16). The chancellor denied the motion, finding that the appellants failed to meet their burden of establishing excusable neglect. *Id.* at 750-51 (¶¶8-9).

¶14. On appeal, the Supreme Court affirmed. *Id.* at 751 (¶11). The Court held that the chancellor did not err by considering the fifteen-month delay that occurred between the filing of the motion for a new trial and the denial of that motion, which was attributable to the appellants' failure to notice the motion for a hearing. *Id.* at 753 (¶17). The Court stated that the chancellor was not limited to "considering only the shorter time period between the expiration of the appeal deadline and the filing of the motion for an extension of time." *Id.* Rather, "an excusable-neglect determination is at bottom an equitable one, taking account of *all relevant circumstances* surrounding the party's omission." *Id.* (quotation marks omitted) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The Court further stated that it could not say that the chancellor abused her discretion by denying the appellants' motion based on a "fact-based determination" that they had failed to establish excusable neglect. *Id.* at 754 (¶19).

¶15.    More recently in *Palmer*, this Court held that a circuit judge did not abuse his discretion by finding that a party failed to establish excusable neglect for not filing a timely notice of appeal. *Palmer*, 271 So. 3d at 684 (¶19). In that case, a final judgment dismissing a medical malpractice wrongful death suit was entered on April 11, 2017. *Id.* at 681-82 (¶¶2-3). The attorney representing the plaintiff unexpectedly left his law firm twenty-eight days later without first filing a notice of appeal. *Id.* at 682, 684 (¶¶4, 15). On May 17, 2017, six days after the deadline for an appeal, another attorney at the firm realized the error and filed a motion for an extension of time. *Id.* at 682 (¶4). The circuit judge denied the motion without any written or on-the-record discussion of the "*Nunnery* factors." *Id.* at 682-83 (¶¶4, 9-11). Nonetheless, this Court affirmed. *Id.* at 684 (¶19). Among other points, we noted that the plaintiff failed to establish why her original counsel did not file a notice of appeal or request an extension before he left the law firm—or why someone else at the firm did not file a notice of appeal before or after his departure. *Id.* at 684 (¶17).

¶16.    In the instant case, in his ruling from the bench, the circuit judge pointed out that co-counsel of record Zouein could have filed a notice of appeal. The judge also noted that there was "other activity going on in [Clanton's] office at [the] time" when a notice of appeal should have been filed (i.e., the filing of the complaint in the Harrison County case). The judge also stated that the motion for an extension should have been filed sooner than twenty days after the missed deadline. In his subsequent written order, the judge stated that after "considering the *Nunnery* factors," he found that York "failed to meet her burden . . . of

9

establishing excusable neglect."

¶17.    Consistent with the precedents discussed above, we cannot say that the circuit judge abused his discretion.  First, we agree with the circuit judge that Zouein could and should have filed a timely notice of appeal.  Zouein entered an appearance in the case and appeared at the summary judgment hearing.  "When an attorney makes an appearance for any party in a case, that attorney will not be allowed to withdraw as attorney for the party without the permission of the court."  UCRCCC 1.13.  Zouein has never filed a motion to withdraw from this case, let alone received permission from the court to withdraw.  Moreover, York failed to submit an affidavit from Zouein or anyone else to explain why Zouein did not file a notice of appeal.  We have only unsworn assertions that Zouein "had ceased any active involvement in the case" or was "no longer involved in the . . . matter."  But under Rule 1.13, Zouein remained responsible for the case and could not unilaterally decide to end her involvement in it.[5]    In the absence of any explanation as to why Zouein failed to file a notice of appeal, we cannot say that the circuit judge abused his discretion by finding that York failed to meet her burden of establishing excusable neglect.

¶18.    There is also substantial evidence to support the circuit judge's finding that Clanton could have filed a timely notice of appeal.  In response to York's motion for an extension,

---

[5] We also note that during the same time period that Zouein had allegedly "ceased any active involvement" in this case, she continued to be actively involved as co-counsel with Clanton in a case pending before this Court, *Murphy v. William Carey University*, No. 2018 CT-00910-COA.  In *Murphy*, Zouein signed and filed appellate briefs as co-counsel of record with Clanton on June 5, 2019, and November 15, 2019.

Root showed that on August 23, 2019—six days before the deadline for York's notice of appeal—Clanton signed and filed an eight-page complaint and civil cover sheet and requested a summons in a personal injury case in the Harrison County Circuit Court. By comparison to the filing of a complaint to commence a new case, "[f]iling a notice [of appeal] is a simple act[.]" *In re Est. of Ware*, 573 So. 2d at 775. The filing of a notice of appeal in this case could and should have been accomplished prior to the deadline, and we cannot say that the circuit judge abused his discretion or clearly erred by finding that York failed to meet her burden of establishing excusable neglect.

## CONCLUSION

¶19. There is substantial evidence to support the circuit judge's finding that York failed to meet her burden of establishing excusable neglect. Therefore, we cannot say that the circuit judge abused his discretion by denying York's motion for an extension of time to appeal.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**

11