# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00261-COA

| | |
|---|---|
| **JOHN THOMAS EASON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE AND WRONGFUL DEATH BENEFICIARIES OF JAMES P. EASON, DECEASED** | **APPELLANT** |
| **v.** | |
| **SOUTH CENTRAL REGIONAL MEDICAL CENTER** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/2022 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | ROBERT C. WILLIAMSON JR. DOUGLAS LAMONT TYNES JR. |
| ATTORNEYS FOR APPELLEE: | RICHARD O. BURSON PEELER GRAYSON LACEY JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 10/15/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., SMITH AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     This case concerns the dismissal of a complaint for failure to prosecute. John Thomas Eason (Eason), individually and on behalf of the estate and wrongful death beneficiaries of James P. Eason, filed a complaint in the Jones County Circuit Court against South Central Regional Medical Center (South Central). Eason claimed that James Eason's death at a nursing home South Central operated was caused by the allegedly negligent care he received at that facility.

¶2.     Over two years after Eason filed his complaint, South Central moved to dismiss the lawsuit for Eason's failure to prosecute. In its motion, South Central asserted that dismissal was warranted pursuant to Rule 41(b)[1] because Eason had not taken any substantive action of record since filing his complaint and had failed to respond to discovery that was nearly two years past due. The circuit court granted South Central's motion to dismiss for failure to prosecute and denied Eason's motion to amend or alter that judgment.

¶3.     Eason appeals, asserting that the circuit court erred (1) by analyzing South Central's "Motion to Dismiss for Failure to Prosecute" pursuant to Rule 41(b) rather than Rule 37, which governs sanctions for a party's failure to cooperate in discovery; and (2) by "failing to consider the clear record of attempted prosecution" when it dismissed Eason's complaint. For the reasons addressed below, we affirm the judgment of the circuit court.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS[2]

¶4.     Eason's medical negligence/wrongful death complaint against South Central was filed on February 27, 2019, and concerned the alleged negligent medical care provided to James Eason (the deceased) in September 2017. Eason alleged that at the age of eighty-four, James Eason was transferred from South Central to Comfort Care Nursing Center (a division

---

[1] Mississippi Rule of Civil Procedure 41(b) provides that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him." M.R.C.P. 41(b).

[2] As the parties acknowledge, this case involves similar procedural issues as those in *David Tisdale and Teresa Tisdale v. South Central Regional Medical Center*, Civil Action No. 2019-25-CV3 (*Tisdale*), a lawsuit that was pending at the same time as Eason's lawsuit in the Circuit Court of Jones County, Mississippi, Second Judicial District, before the same circuit court judge. Counsel for the plaintiffs and the defendant are the same in both cases.

operated by South Central) on September 12, 2017, with Stage IV lung cancer, type II diabetes mellitus, hypertension, and a recent bout of pneumonia. According to the complaint, his condition declined in the following six days, and he was transferred back to the hospital on September 18, 2017, where he died later that day. Eason alleges that James's death was caused by the alleged failure of the medical staff at Comfort Care to provide James with even minimally adequate care. Eason was represented by F.M.Turner III.

¶5. Eason served South Central with the summons and complaint on June 11, 2019. South Central filed its answer to the complaint on July 18, 2019, and on August 21, 2019, South Central filed its notice of service of interrogatories and requests for production to Eason.

¶6. On March 13, 2020, "the President of the United States declared a national emergency due to the outbreak of [COVID-19]." Emergency Administrative Order, *In re Emergency Order Related to Coronavirus (COVID-19)* (EAO), No. 2020-AD-00001-SCT, at 1 (Miss. Mar. 13, 2020). The Mississippi Supreme Court issued its first Emergency Administrative Order (EAO-1) on the same day. In that order, the supreme court "delineated 'certain emergency actions' and 'guidelines' to be taken by 'all the courts of the state' in light of the COVID-19 pandemic." *Scott v. UnitedHealthcare of Miss. Inc.*, 374 So. 3d 1270, 1273-74 (¶5) (Miss. Ct. App. 2023) (quoting EAO-1 at 1). Although the order provided that "[c]ourts should consider the avoidance of any proceedings that involve vulnerable persons or require witnesses or parties to travel from an infected area," EAO-1 at 1, the order also explicitly provided that "[i]n compliance with the Constitution, all state courts—municipal, justice,

3

county, chancery, circuit, and appellate courts—will remain open for business to ensure courts fulfill their constitutional and statutory duties." *Id.* Subsequent EAOs the supreme court issued relating to COVID-19 consistently reiterated that the Mississippi courts were to "remain open and accessible." *Scott*, 374 So. 3d at 1273-74 (¶5) (citing EAO-27, 2021-AD-00001-SCT, at 1 (Miss. Jan. 27, 2022)).

¶7. On April 3, 2020, counsel for South Central sent a good-faith letter to Turner noting that he had not received responses to the discovery propounded to Turner's client on August 21, 2019, and requesting that the discovery responses be furnished by May 1, 2020. The letter also informed Turner that if he needed more time, he should let counsel know, and he would "be happy to work with [him]."

¶8. The next action reflected in the record occurred five months later on August 26, 2020, when Turner filed a motion to withdraw as Eason's counsel. In that motion, Turner stated that the reason for his withdrawal was that "[m]ovant is 69 years of age and has underlying health conditions that place him at high risk for complications from COVID-19[.]" On August 31, 2020, less than a week after the motion was filed, the circuit court entered its order allowing Turner to withdraw as counsel for Eason and granting Eason forty-five days to secure new counsel.

¶9. On October 12, 2020, Robert C. Williamson filed an entry of appearance as counsel for Eason.

¶10. On March 2, 2021, counsel for South Central sent a good-faith letter to Williamson requesting that he furnish responses to the discovery propounded on August 21, 2019, and

4

informing Williamson that a previous good-faith letter had been sent to Turner (Eason's former counsel) on April 3, 2020. Copies of the discovery requests and the April 3, 2020 good-faith letter were included in the March 2, 2021 correspondence to Williamson.

¶11. Williamson filed a "Notice of Change of Address," effective May 1, 2021, on April 29, 2021.

¶12. South Central filed a "Motion to Dismiss for Failure to Prosecute" on August 5, 2021. South Central asserted that dismissal pursuant to Rule 41(b) was warranted because Eason had taken no substantive action of record in this matter since he filed his complaint on February 27, 2019.[3] Nor had Eason responded to discovery that South Central propounded to him on August 21, 2019, over two years from the filing of the subject Rule 41(b) motion, and despite two good-faith letters South Central sent to Turner (on April 3, 2020) and Williamson (on March 2, 2021).

¶13. Ten days after South Central filed its Rule 41(b) motion, on August 15, 2021, Eason filed a notice of service of discovery, indicating that he had served his responses to the discovery that South Central had propounded two years earlier on August 21, 2019.

¶14. The next day, Eason filed his response to South Central's Rule 41(b) motion, asserting that dismissal was not proper for several reasons. Eason contended Turner withdrew from the matter without South Central's objection; Williamson filed his entry of appearance within the forty-five-day deadline for obtaining new counsel that the circuit court allowed Eason;

---

[3] In its motion, South Central noted that Turner had filed a motion to withdraw as Eason's counsel on August 26, 2020. The circuit court granted that motion pursuant to its order dated August 31, 2020, and Williamson filed an entry of appearance as counsel for Eason on October 12, 2020.

COVID-19 complicated Williamson's ability to "get[] up to speed" on the Eason file and the other files he took over from Turner; Williamson "has no recollection of seeing or reviewing" the March 2, 2021 good-faith letter that South Central's counsel mailed to him; and when Williamson "became aware of the good-faith demand, immediate steps were taken to respond to the discovery."

¶15. The circuit court held a hearing on South Central's Rule 41(b) motion on January 18, 2022. At the hearing, Eason addressed the arguments he had made in his response and also asserted that under the facts of this case, South Central's Rule 41(b) motion should more appropriately be analyzed as "a Rule 37 dismissal or Rule 37 motion for discovery sanctions." At the end of the hearing, the circuit court took the matter under advisement and requested additional briefing on the Rule 37 issue. The circuit court entered an order granting South Central's Rule 41(b) motion on February 25, 2022 (February 2022 Order).

¶16. Eason filed a motion to alter or amend the judgment on March 7, 2022. The circuit court conducted a hearing on that motion on January 17, 2023. Shortly after that, the circuit court entered an order denying Eason's motion to alter or amend the judgment on February 6, 2023 (the February 2023 Order). In his order, the circuit court judge reiterated the timeline of events outlined in the February 2022 Order and then noted that the arguments made in Eason's motion to alter or amend were "basically the same" as those made in the *Tisdale* motion to alter or amend that he had recently ruled on. Thus, the circuit court judge attached a copy of the *Tisdale* "Order Denying Plaintiffs' Motion to Alter or Amend Judgment" to the *Eason* Order, and incorporated the *Tisdale* Order by reference. *See supra* note 2. The *Eason*

6

Order provided: "For all of the same reasons set out in the [*Tisdale*] Order Denying Plaintiffs' Motion to Alter or Amend Judgment . . . the Court now likewise DENIES [Eason's] Motion to Alter or Amend Judgment herein."

¶17. Eason appeals.

## STANDARD OF REVIEW

¶18. We will reverse "a trial court's dismissal for failure to prosecute pursuant to Rule 41(b) . . . only if [we] find[] the trial court abused its discretion." *Leasy v. SW Gaming LLC*, 335 So. 3d 555, 557 (¶6) (Miss. 2022). "The reviewing court should not reverse a discretionary finding by the lower court unless it comes to a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Id.* at 558 (¶6) (internal quotation mark omitted). In particular, "[a] finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Id.* (internal quotation mark omitted). In applying "the applicable abuse-of-discretion standard of review," this Court may not "reweigh[] the evidence [or] substitut[e] its judgment for that of the trial court." *Id.* at 560 (¶13).[4] Questions of law are reviewed de novo. *Stephens v. Equitable Life Assur. Soc'y of U.S.*, 850 So. 2d 78, 82 (¶10) (Miss. 2003).

---

[4] In his reply brief, Eason asserts that a "higher standard of review" applies when a Rule 41(b) dismissal is with prejudice, citing cases from the United States Court of Appeals for the Fifth Circuit and a case from the United States District Court for the Northern District of Texas. In *Leasy*, however, the Mississippi Supreme Court affirmed the circuit court's Rule 41(b) dismissal of the plaintiff's lawsuit *with prejudice* and set forth a detailed standard of review. *Leasy*, 335 So. 3d at 557 (¶4). Accordingly, we follow this precedent here.

## DISCUSSION

### I.  The Circuit Court's Analysis of South Central's "Motion to Dismiss for Failure to Prosecute" Pursuant to Rule 41(b)

¶19.  According to Eason, the only basis for the circuit court's dismissal of his lawsuit was his "failure to timely respond to discovery."  Based on this premise, Eason asserts that the circuit court erred by analyzing South Central's motion as a motion to dismiss for failure to prosecute under Rule 41(b) rather than as a "discovery dispute" pursuant to Rule 37, which governs the imposition of sanctions for a party's "[f]ailure to [m]ake or [c]ooperate in [d]iscovery."  M.R.C.P. 37.  Eason asserts that pursuant to Rule 37 and the applicable caselaw, the circuit court erred in dismissing his lawsuit because South Central never filed a motion to compel the discovery it propounded to Eason prior to filing its motion to dismiss. We are unpersuaded by Eason's assertions, as we discuss below.

¶20.  We find that Eason's Rule 37 argument is based upon an incorrect premise.  South Central sought dismissal pursuant to Rule 41(b), and the circuit court granted South Central's motion pursuant to Rule 41(b) based upon broader considerations than solely Eason's failure to timely respond to discovery.

¶21.  To elaborate, South Central did not seek dismissal for failure to prosecute based only on Eason's failure to respond to discovery.  Rather, South Central's motion explicitly provides that it was filed pursuant to Rule 41(b) because "[p]laintiff has taken no action of record since filing his [c]omplaint more than two . . . years ago *and* has failed to respond to [South Central's] basic written discovery, which is now nearly two . . . years past due." (Emphasis added).

8

¶22.    Likewise, the circuit court's orders plainly show that when dismissing Eason's lawsuit for his failure to prosecute, the circuit court took into account the circumstances of the case as a whole (including the timing of all the filings and communications occurring in this lawsuit), the parties' arguments, and the applicable caselaw.

¶23.    Specifically, in the February 2022 order, the circuit court set forth a detailed timeline, noting the timing of each filing and any other communication made by the parties beginning with Eason filing his complaint against South Central on February 27, 2019.[5]  The circuit court then summarized the arguments of both parties in detail.  Following this information, the circuit court recognized that Rule 41(b) allows a defendant to move for dismissal of an action "'[f]or failure of the plaintiff to prosecute.'" (Quoting M.R.C.P. 41(b)).  The circuit court then succinctly delineated the applicable principles established by the caselaw interpreting Rule 41(b).

¶24.    With the timeline and the applicable precedent in mind, the circuit court found "a clear record of delay by [Eason] in this case."  The circuit court found that "[Eason] had not taken *any substantive action in this case* for over two . . . years since filing [his] [c]omplaint on

---

[5] In addition to noting the filing of Eason's complaint on February 27, 2019, the circuit court's timeline included the filing of South Central's answer on July 18, 2019, and its notice of service of discovery on Eason filed on August 21, 2019; the April 20, 2020 good-faith letter that South Central sent to Turner; Turner's August 26, 2020 motion to withdraw and the order granting that motion entered on August 31, 2020; Williamson's October 12, 2020 entry of appearance; the March 2, 2021 good-faith letter that South Central sent to Williamson (including copies of the discovery and the April 20, 2020 good-faith letter to Turner); Williamson's April 29, 2021 notice of change of address; the filing of South Central's Rule 41(b) motion to dismiss on August 5, 2021; Eason's responses to South Central's discovery on August 15, 2021; and his response to South Central's motion on August 15, 2021.

February 27, 2019." (Emphasis added). The circuit court took into account Turner's withdrawal and Williamson's subsequent entry of appearance on October 12, 2020. The circuit court then observed that Eason still failed to explain his "delay of over ten . . . months in responding to discovery *or taking any action at all to propel the case forward.*" (Emphasis added). Thus, in addition to Eason's delay in responding to South Central's discovery requests, the circuit court also took into account the lack of "any substantive action" or "any action at all to propel the case forward."

¶25. The circuit court's February 2023 Order denying Eason's motion to alter or amend the judgment also shows that the court took into account the circumstances of the case as a whole in dismissing Eason's lawsuit for his failure to prosecute. Even when discussing Eason's late-filed discovery, the circuit court also found that these responses "were filed only after [South Central] filed its Motion to Dismiss." The circuit court also observed, "In examining the delay in this case, it is not lost on the [c]ourt that the Plaintiff[] [himself has] never propounded any discovery."[6] As such, the reactionary nature of Eason's actions and his failure to propound any discovery of his own were also factors the court had taken into consideration when it dismissed Eason's lawsuit for his failure to prosecute it.

¶26. For these reasons, we reject Eason's incorrect premise that the circuit court relied only on Eason's failure to timely respond to the outstanding discovery requests in dismissing his complaint. Rather, we find that South Central's Rule 41(b) motion to dismiss was not based

---

[6] This language is found in the *Tisdale* Order that the circuit court judge attached to and incorporated by reference into the *Eason* February 2023 Order denying Eason's motion to alter or amend the judgment. Like the Tisdales, Eason also had not pursued any discovery in his lawsuit.

on a discovery dispute, and the circuit court properly did not treat it as one. Our review of the record shows that the circuit court dismissed Eason's lawsuit based upon its consideration of the entire record, the arguments of the parties, and Rule 41(b) case precedent.

¶27. As such, we likewise find no merit in Eason's second argument—that South Central was required to file a motion to compel the overdue discovery before seeking dismissal of Eason's lawsuit and, that because it did not, the circuit court erred in dismissing Eason's lawsuit with prejudice. Discussing *Manning v. King's Daughters Medical Center*, 138 So. 3d 109 (Miss. 2014), the circuit court found that Eason's argument that a motion to compel was a prerequisite to dismissal was incorrect. We agree.

¶28. The supreme court in *Manning* affirmed the circuit court's Rule 41(b) dismissal following a plaintiff's two-year delay in responding to discovery requests. *Id.* at 119 (¶31). In the course of its analysis, the supreme court observed that "the fact that [the defendant] did not file a motion to compel [the plaintiff's] [discovery] responses . . . does not weigh in [the plaintiff's] favor, as the test regarding a clear record of delay focuses on a plaintiff's conduct, not on the defendant's efforts to prod a dilatory plaintiff into action." *Id.* at 116 (¶21). Continuing, the supreme court held that "[o]ur rules and precedent make clear that a motion to compel is not a prerequisite to a motion to dismiss when, as here, there is a total failure of a party to participate in discovery." *Id.* at 118 (¶30); *see Hillman v. Weatherly*, 14 So. 3d 721, 727 (¶22) (Miss. 2009) (rejecting plaintiff's argument that dismissal was improper because the defendant had not filed a motion to compel outstanding discovery and recognizing that "when assessing the propriety of a Rule 41(b) dismissal, the . . . test focuses

11

on the plaintiff's conduct, not on the defendant's efforts to prod a dilatory plaintiff into action" (citations omitted)).

¶29. Similarly, in *Leasy*, the supreme court reversed this Court's decision and affirmed the circuit court's Rule 41(b) dismissal, finding that a plaintiff's two-year delay in responding to discovery constituted "an undeniably clear record of delay in prosecuting the case, which alone is sufficient to warrant a dismissal." *Leasy*, 335 So. 3d at 559 (¶11).

¶30. In sum, for the reasons we have discussed above, we find no error in the circuit court analyzing South Central's motion to dismiss for failure to prosecute pursuant to Rule 41(b). Accordingly, we reject Eason's first assignment of error.

## II. The Circuit Court's Dismissal of Eason's Lawsuit Pursuant to Rule 41(b)

¶31. Eason asserts that the circuit court erred by purportedly "failing to consider the clear record of attempted prosecution" when it dismissed his lawsuit. We disagree for the reasons discussed below.

¶32. As noted, a defendant may move to dismiss an action or claim "[f]or failure of the plaintiff to prosecute" pursuant to Rule 41(b). Indeed, a trial court has the authority to dismiss an action even without "a motion by the defendant, because the power to dismiss for failure to prosecute is an inherent power in any court of law or equity and has been regarded as a means necessary to control the court's docket and promote the orderly expedition of justice." *Leasy*, 335 So. 3d at 558 (¶8) (internal quotation mark omitted).

¶33. "[T]his Court may uphold a Rule 41(b) dismissal when there is: (1) a record of dilatory *or* contumacious conduct by the plaintiff; and (2) a finding by this Court that lesser

sanctions would not serve the interests of justice." *Holder v. Orange Grove Med. Specs. P.A.*, 54 So. 3d 192, 197 (¶18) (Miss. 2010) (emphasis added). "Additional 'aggravating factors' or actual prejudice may bolster the case for dismissal, but are not requirements." *Id.* "Delay alone may suffice for a dismissal under Rule 41(b)." *Manning*, 138 So. 3d at 117 (¶22). The circuit court in this case found "a clear record of delay" and found that "any sanctions less than dismissal with prejudice would not serve the interest of justice." We find no abuse of discretion in the circuit court's findings. We turn now to address these factors.

### A.    Clear Record of Delay

¶34.    The circuit court found "a clear record of delay" in this case. As we addressed above, the circuit court's February 2022 Order set forth a detailed timeline of all the filings and communications that had taken place in the lawsuit. Having recognized *all* of these filings, the circuit court found that "[Eason] had not taken any *substantive action* in this cause for over two . . . years." Emphasis added. That is, the circuit court found that Eason took no substantive action of record since filing his complaint on February 27, 2019, until August 15, 2021, when Eason filed his responses to the discovery South Central had propounded on August 21, 2019. In its February 2023 Order, the circuit court also observed that Eason had never propounded any discovery of his own throughout the course of the lawsuit.

¶35.    Eason asserts that the "record does not contain 'significant periods of total inactivity that have been held to constitute a clear record of delay.'" (Quoting *Morris v. Ocean Systems Inc*. 730 F.2d 248, 252 (5th Cir. 1984)). In particular, Eason asserts that the circuit court "miscalculated" the delay in this case because it did not take into account the substitution of

new counsel on October 12, 2020, and Williamson's filing of a notice of change of address on April 29, 2021. Eason asserts that these actions are evidence of "affirmative action to prosecute the case." We are unpersuaded by this argument.

¶36. Regarding the substitution of counsel, the circuit court's February 2022 Order plainly shows that the court took this filing into consideration. The circuit court recognized that Turner had withdrawn from the case and that Williamson entered his appearance as Eason's new counsel on October 12, 2020. As to these circumstances, the circuit court found that "[e]ven considering [Turner's] withdrawal . . . and the subsequent entry of current counsel, [Eason has] not provided and the Court does not find a valid reason for [Eason's] delay of over ten . . . months in responding to discovery or taking any action at all to propel the case forward."

¶37. Further, the timeline included in the circuit court's February 2022 Order shows that Eason's lawsuit had already been pending for a year and seven months when Williamson took over his case. No record activity had taken place on Eason's part during that time, and the discovery South Central had propounded in August 2019 had already been outstanding for over a year. South Central had already sent one good-faith letter to Turner during that time period.

¶38. Indeed, no scheduling order had been entered in the case, so the discovery deadlines and practice set forth in Rule 4.03 of our Uniform Civil Rules of Circuit and County Court Practice applied. Rule 4.03 provides: "All discovery must be completed within ninety days from service of an answer by the applicable defendant. Additional discovery time may be

14

allowed with leave of court upon written motion setting forth good cause for the extension." UCRCCC 4.03.

¶39.    There is no evidence in the record that Eason filed any motion requesting that the time for discovery be extended or requesting additional time to respond to discovery. Nor is there any evidence in the record that Eason sought additional time to respond to discovery from South Central's counsel. As such, the ninety days allowed for *any* discovery to take place had already expired in early October 2019—a year before Williamson entered an appearance in the case. *See* UCRCCC 4.03. Eason, however, had not responded to the discovery propounded by South Central, nor had Eason served any discovery requests himself during that time. The federal case Eason relies upon, *Morris*, 730 F.2d at 252, speaks in terms of "significant *periods* [(plural)] of total inactivity." (Emphasis added). The course of events, as set forth in the circuit court's timeline, show that when Williamson assumed Eason's case in October 2020, a "significant period[] of delay" had already occurred.

¶40.    The circuit court further found that on October 12, 2020, when Williamson filed his entry of appearance using the Mississippi Electronic Court System (MEC), "South Central's [n]otice of [s]ervice of discovery was already on MEC. A brief review of the docket report on MEC should have given [Williamson] notice and cause to inquire of . . .Turner whether South Central's discovery had been answered." The circuit court pointed out, "[A]s [Williamson] acknowledged . . . at the hearing, checking for unanswered discovery should have been one of the first steps taken. Apparently, this never happened, and this case sat static until South Central filed its [m]otion to dismiss." In other words, after Williamson

15

began representing Eason, another "significant period[] of total inactivity" took place.[7]  See *Wren v. Zellers*, 390 So. 3d 1011, 1016 (¶13) (Miss. 2024) (affirming Rule 41(b) dismissal despite intervening COVID-19 pandemic based upon "clear delay over numerous different periods").

¶41.    When discussing Eason's late-filed discovery, the circuit court found that Eason's responses "were filed only after [South Central] filed its Motion to Dismiss"; and thus, the circuit court also took into account the "reactionary" nature of Eason's response.  *See, e.g.*, *Holder*, 54 So. 3d at 198 (¶22) (observing that in assessing whether a Rule 41(b) dismissal is warranted, a court may consider whether the action taken by the plaintiff was "reactionary" to a threat of dismissal "or whether the activity was an effort to proceed in the litigation").

¶42.    For these reasons, the circuit court found there was "insufficient justification for the delay" in this case.  We find that the circuit court did not abuse its discretion in making this determination.

¶43.    With respect to both purported actions that Eason asserts constitute "affirmative action[s] to prosecute the case" (Williamson's entry of appearance and the filing of his notice of a change of address), we observe that the circuit court considered—and rejected—Eason's characterization.  The circuit court correctly recognized that "an action of record has been

---

[7] In his reply brief, Eason cites *Cox v. Cox*, 976 So. 2d 869 (Miss. 2008), for example, in support of his argument that timely hiring new counsel "evidences [his] attempt[] to prosecute the case and advance the case to judgment."  But *Cox* merely recognizes that "[e]fforts to secure substitute counsel may constitute excusable delay."  *Id.* at 875 (¶20).  As we have addressed, the circuit court took into account this time period.  There was over a one-year delay between the filing of the complaint and Turner's motion to withdraw, plus a ten-month delay from the time Williamson entered his appearance on October 12, 2020, and the filing of the discovery responses on August 15, 2021.

characterized as one that 'advances the case to judgment.'" (Quoting *Glass v. City of Gulfport*, 271 So. 3d 602, 604 (¶10) (Miss. Ct. App. 2018)). After further considering the Court's analysis in *Glass*, the circuit court found that "[t]hese two actions by [Eason's] succeeding attorneys, while they may be noted on the docket, are not 'actions of record' that advance the case to judgment or move the case closer to a judgment on the merits." (Citing *id.* at 605 (¶14)). We agree.

¶44.   Like the circuit court, we find *Glass* instructive. In *Glass*, we considered what constitutes an "action of record" sufficient to avoid dismissal for failure to prosecute under Rule 41(d). *Glass*, 271 So. 3d at 604-05 (¶¶10-14). The plaintiff had filed "of record" a response to the clerk's Rule 41(d) motion to dismiss, but in that response, she simply requested that her case remain on the docket and referenced defendant's motion to dismiss against her. *Id.* at 603 (¶5).

¶45.   This Court found that the plaintiff's response, though filed of record, did not constitute an "action of record" sufficient to avoid a Rule 41(d) dismissal. *Id.* at 604-05 (¶¶13-14). In reaching this conclusion, the Court recognized that "[p]leadings, discovery requests, and deposition notices are 'actions of record,'" *id.* at 604 (¶10) (quoting M.R.C.P. 41(d) advisory committee's note), then observed that the plaintiff's filing did not constitute a "pleading" as defined under Mississippi Rule of Civil Procedure 7(a).[8]   *Id.* at (¶¶12-

---

[8] Mississippi Rule of Civil Procedure 7(a) defines a "pleading" as

a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who is not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is

13). The Court further found that the response failed to "move the case closer to a judgment on the merits." *Id.* at 605 (¶14).

¶46.    Applying this precedent here, we find that neither Williamson's entry of appearance nor the notice of change of address constitutes a "pleading," pursuant to Rule 7(a), nor are they "discovery requests, [or] deposition notices." *See id.* at 604 (¶10). We also find that neither of these filings, in and of themselves, "move the case closer to a judgment on the merits." *Id.* at 605 (¶14). This is particularly true here, where Eason did not respond to discovery requests until after South Central filed its motion to dismiss (despite South Central sending good-faith letters to both Turner and Williamson),[9] and Eason never propounded any discovery of his own, sought any depositions, or took any other action that would serve to "move the case closer to a judgment on the merits." *Id.* Accordingly, we find no "clear error of judgment" in the circuit court's determination that these filings did not constitute substantive actions of record in calculating the delay in this case. See *Leasy*, 335 So. 3d at 557 (¶6).

¶47.    Eason also asserts that any delay was excusable because of the COVID-19 global pandemic. We find that this argument is unpersuasive.

¶48.    As an initial matter, by the time the pandemic began in March 2020, there had already

served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

[9] Both attorneys claim they did not see the good-faith letters, though there is no dispute that Turner's letter was mailed to his address of record and that Williamson's letter was mailed to his address of record nearly two months before the notice of change of address was filed.

18

been a year of inactivity on Eason's part since he filed his complaint in February 2019. Further, the supreme court issued twenty-seven EAOs relating to COVID-19 from the time the national COVID-19 emergency was declared in March 2020. In these orders, "the supreme court consistently recognized the constitutional requirement that Mississippi state courts remain open and accessible."[10] *Scott*, 374 So. 3d at 1273 (¶5) (citing EAO-27, 2021-AD-00001-SCT, at 1 (Miss. Jan. 27, 2022)).

¶49. Likewise, the supreme court recognized "the trial courts' discretionary authority to control their general dockets as the individual judges saw fit." *Id.* at 1274 (¶5) (citing EAO-14, 2020-AD-00001-SCT, at 4 (Miss. July 23, 2020)). *Id.* To this end, the supreme court encouraged the use of "technologies, including electronic filing, teleconferencing and videoconferencing" to ensure that court proceedings remained ongoing. *See, e.g.*, EAO-5, 2020-AD-00001-SCT, at 2 (Miss. Mar. 20, 2020).

¶50. In *Scott*, this Court affirmed a Rule 41(d) dismissal for failure to prosecute. In reaching this determination, this Court rejected COVID-19 as an excuse for the delay at issue in that case. *Scott*, 374 So. 3d at 1278-79 (¶¶34-38). We recognized, as we do here, that throughout the pandemic, the courts were never closed, the practice of law continued, and the supreme court, in its EAOs, recognized the various forms of communication available to allow cases to progress, such as "technologies, including electronic filing, teleconferencing and videoconferencing." *Id.* at n.9.

---

[10] *See, e.g.*, Miss. Const. art. 3, § 24 ("All courts shall be open[,] . . . and justice shall be administered without sale, denial, or delay."); *id.* § 25 ("No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.").

¶51. The circuit court here squarely addressed the COVID-19 issue and rejected Eason's arguments for similar reasons as those in *Scott*, as follows:

> [T]his Court is unable to see how [COVID-19] would excuse . . . [the continued delay in responding to South Central's discovery]. [COVID-19] did not prevent communication between attorney and client or attorney and expert witness by telephone, email, telefax, Zoom or other communication [applications] or by regular mail during the two-year period that discovery went unanswered.[11]

¶52. To be clear, this Court certainly "recognizes that the pandemic . . . had a substantial effect on lawyers' ability to practice law," *Wren*, 390 So. 3d at 1016 (¶13), but just as we determined in *Wren* and *Scott*, we likewise find no abuse of discretion in the circuit court's analysis regarding the effect of COVID-19 in this case. *Id.*; *Scott*, 374 So. 3d at 1278-79 (¶¶34-38).[12] As an initial matter, it bears repeating that in this case, the Rule 4.03 ninety-day period within which discovery must be completed elapsed on October 16, 2019—nearly five months before the COVID-19 pandemic was announced and over ten months before Eason's original lawyer filed his motion to withdraw due to health concerns. Nevertheless, at no time did Eason request an extension of the ninety-day discovery period or additional time to

---

[11] The circuit court judge set forth this finding in the *Tisdale* Order that he attached to and incorporated by reference into the *Eason* February 2023 Order denying Eason's motion to alter or amend the judgment. Like the Tisdales, Eason also had argued that COVID-19 played a role in the delay.

[12] Unlike the dissent, we do not find that the *Wren* decision is distinguishable in any meaningful way. The dissent states that unlike the circuit court in *Wren*, "the [circuit] court [in this case] did not consider whether the pandemic's effects contributed to the delay in prosecuting the cause." Dis. Op. ¶75. As we have addressed above, however, the record actually reflects that the circuit court judge squarely addressed the COVID-19 issue in the *Tisdale* Order attached to and incorporated by reference into the *Eason* February 2023 Order.

20

respond to the discovery that South Central served on August 21, 2019. *See* UCRCCC 4.03. In any event, the technologies available to Eason during COVID-19 would have not only allowed Eason to respond to discovery, but they were also available to propound discovery on Eason's part, conduct depositions, communicate with the circuit court via MEC or South Central's counsel if additional time were necessary to serve or respond to discovery, and generally move Eason's lawsuit forward as necessary. Further, if COVID-19 became a problem for either attorney or Eason, a motion seeking a stay or other relief could have been filed via MEC. No activity in this regard took place.

¶53.  In sum, we find no abuse of discretion, and certainly no "clear error," in the circuit court's finding that a clear record of delay existed in this case.

### B.   Lesser Sanctions

¶54.  We also find that the circuit court carefully considered the second "lesser sanctions" *Holder* factor, finding that "any sanctions less than dismissal with prejudice would not serve the interest of justice." (Citing *Regan v. S. Cent. Reg'l Med. Ctr*., 234 So. 3d 1242, 1247 (¶20) (Miss. 2017)). Eason's counsel argued that lesser sanctions were appropriate in this case, and the circuit court heard the parties' arguments on this issue.

¶55.  In determining that lesser sanctions would not suffice, the circuit court noted that the medical care forming the basis of Eason's negligence action "occurred in September of 2017, over four . . . years ago, and [Eason's] [c]omplaint was filed almost three . . . years ago." Although "South Central's discovery was propounded on August 21, 2019, . . . it took [Eason] until August 15, 2021, nearly two . . . years later, to respond to the discovery or

21

otherwise take any action to forward his case." The circuit court particularly noted that even "after he entered his appearance, [Williamson] allowed more than ten . . . months to pass and allowed [South Central] to file [its] [m]otion to [d]ismiss . . . before he finally responded to South Central's discovery and/or took any substantive action in this case."

¶56. After describing the clear delay that occurred in this case, the circuit court specifically addressed the effect of the delay. The circuit court found that "[i]n the more than four . . . years since the subject medical care, the ability of [South Central] to adequately prepare its defenses has no doubt diminished. Detailed memory fades, care is provided for hundreds of patients in the interim[,] and care providers change jobs and relocate." As counsel noted at the hearing, the emergency room physician who evaluated James Eason when he returned to the hospital on the day that he died is now retired. In sum, the circuit court found "that the only appropriate sanction is to grant [South Central's] [m]otion and dismiss this cause with prejudice."

¶57. We find no abuse of discretion in the circuit court's finding on this issue. Other lesser sanctions proposed by Eason's counsel cannot restore faded memories of fact witnesses and busy medical professionals, who may have either retired or relocated their practices out-of-state. *See Hillman*, 14 So. 3d at 728 (¶25) ("This Court has affirmed a dismissal with prejudice when lesser sanctions could not cure the prejudice to a defendant caused by the delay."); *see also, e.g.*, *Palmer ex rel. Wrongful Death Beneficiaries v. Clark Clinic Inc.*, 271 So. 3d 680, 684 (¶14) (Miss. Ct. App. 2018) (generally recognizing that "[m]emories fade, and facts become incapable of being produced," thus even minimal delay can impact judicial

22

proceedings in cases in which the "underlying medical-malpractice claim [was] over four years old"); *In re Est. of Brewer*, 755 So. 2d 1108, 1114 (¶25) (Miss. Ct. App. 1999) (recognizing "it was . . . helpful that the wrongful death claim be diligently pursued[;] . . . [o]therwise . . . [w]itnesses could be lost or their memories fade . . . [and] [u]ngathered physical evidence could be destroyed or lost").

### C.    Actual Prejudice

¶58.    Eason, however, asserts that South Central "made no showing that it did not have access to the witnesses [that may have relocated]," and "[n]o showing of actual faded memories was made." But proof of actual prejudice is not required to support dismissal. Rather, a "clear record of delay in prosecuting the case . . . [is] alone . . . sufficient to warrant a dismissal." *Leasy*, 335 So. 3d at 559 (¶11); *Holder*, 54 So. 3d at 200 (¶30) ("Despite the defendant's failure to present evidence of witnesses' fading memories, we find that the delay alone may result in presumed prejudice to the defendant."); *id.* at 201 (¶34) ("[D]elay alone may be sufficient to warrant a dismissal. Prejudice may be presumed from this delay.").

¶59.    In *Leasy*, the circuit court dismissed the plaintiff's lawsuit with prejudice pursuant to Rule 41(b) following a two-year delay in responding to the defendant's discovery requests. *Leasy*, 335 So. 3d at 557 (¶4). This Court reversed the dismissal, finding that the defendant "'failed to prove actual prejudice and could only speculate as to the possibility.'" *Id.* at 559 (¶11) (quoting *Leasy v. SW Gaming LLC*, 364 So. 3d 706, 712 (¶22) (Miss. Ct. App. 2021), *rev'd*, 335 So. 3d 555 (Miss. 2022)).

¶60.    The Mississippi Supreme Court granted certiorari, reversed this Court's decision, and

affirmed the circuit court's Rule 41(b) dismissal.  The supreme court summarized its

reasoning as follows:

> Given the length of delay, prejudice is presumed under *Holder* and our precedent. Instead of presuming prejudice based on the length of delay as in *Holder* or by affording the trial court deference in its finding of actual prejudice, the Court of Appeals . . . reweighed the evidence, substituting its judgment for that of the trial court. As a result, the Court of Appeals' opinion directly conflicted with prior appellate decisions and must be reversed.

*Id.* at 560 (¶13).

¶61.   Here, as set forth above, the circuit court found that South Central had been prejudiced

by Eason's clear delay in prosecuting his claims.  In accordance with the applicable abuse

of discretion standard and explicit supreme court precedent, we find no abuse of discretion

in the circuit court's decision based on the clear record of delay in this case.

### D.     Aggravating Factors

¶62.   Although "[a]dditional 'aggravating factors'[13] . . . may bolster the case for dismissal,

. . . [they] are not requirements." *Holder*, 54 So. 3d at 197 (¶18).  As the supreme court has

pointed out, "[t]his Court has emphasized the presence of delay or contumacious conduct

drives the dismissal inquiry, not the presence of prejudice or aggravating factors." *Regan*,

234 So. 3d at 1246 (¶17).  In short, the absence of an aggravating factor does not defeat

dismissal under Rule 41(b).  The circuit court properly dismissed Eason's case pursuant to

the two-part test set forth in *Holder*, 54 So. 3d at 197 (¶18).  Namely, the circuit court found

---

[13] "[A]ggravating factors include: "(1) the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay; (2) the degree of actual prejudice to the defendant; and (3) whether the delay was the result of intentional conduct." *Holder*, 54 So. 3d at 200 (¶31).

a clear record of delay, and the court found that no lesser sanctions would suffice in this case. As we discussed above, we find no abuse of discretion in the circuit court's Rule 41(b) dismissal based on these factors. Accordingly, because "[t]he presence of an aggravating factor . . . is not a requirement," *id.*, we find that the lack of an explicit finding of an aggravating factor in this case does not constitute reversible error.

## CONCLUSION

¶63. For all the reasons addressed above, we find that the circuit court properly analyzed South Central's motion to dismiss pursuant to Rule 41(b) and properly dismissed Eason's lawsuit with prejudice pursuant to Rule 41(b). We find no abuse of discretion in the circuit court's Rule 41(b) dismissal in this case. Accordingly, we affirm the circuit court's February 2022 Order granting South Central's motion to dismiss for failure to prosecute and the circuit court's February 2023 Order denying Eason's motion to alter or amend the judgment.

¶64. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD AND McCARTY, JJ.; WESTBROOKS, J., JOINS IN PART. WEDDLE, J., NOT PARTICIPATING.**

**LAWRENCE, J., DISSENTING:**

¶65. I respectfully disagree with the majority's decision. The COVID-19 pandemic caused unforeseen delays and complications within the judicial system. I am proud of the courts of this state for remaining open and conducting business to the best of its ability commensurate with the safety of personnel and parties. However, to act as if the COVID-19 pandemic did

25

not substantially affect lawyers and their law practice is akin to sticking our collective heads in the sand. This Court has previously recognized that "[w]hile the court system across Mississippi did remain open during the pandemic, . . . the pandemic certainly had a substantial effect on lawyers' ability to practice law." *Wren v. Zellers*, 390 So. 3d 1011, 1016 (¶13) (Miss. Ct. App. 2024).

¶66. The state supreme court entered multiple emergency orders concerning safety throughout the pandemic. On March 20, 2020, it was ordered that "[a] case involving an attorney or party who is ill or in a high-risk category shall be rescheduled." Emergency Administrative Order-5, No. 2020-AD-00001-SCT, at 4 (Miss. Mar. 20, 2020). In August 2021, the supreme court issued an order containing the following:

> Unfortunately, **circumstances have precipitously deteriorated, especially with respect to the Delta variant of COVID-19**. . . . [T]he Delta variant is much more contagious and spreading three times faster than other strains. As of August 2, 2021, there were 1,574 new COVID-19 confirmed infections in Mississippi. Two days later, on August 4, 2021, the number of new confirmed infections had more than doubled to 3,164. . . . COVID-19-related hospitalizations and ICU occupancy are rapidly rising to levels seen during the worst days of the pandemic in Mississippi[.] . . . In exercising their discretionary powers, individual judges are strongly encouraged to refer to the guidance issued by the MSDH for preventing the spread of COVID-19 (e.g., recommendations on social distancing; personal-protective measures, including face coverings; and capacity limitations for gatherings).

Emergency Administrative Order-21, No. 2021-AD-00001-SCT, at 1-2 (Miss. Aug. 5, 2021) (emphasis added) (footnotes omitted). Then, in December of the same year, the supreme court issued an emergency order stating:

> Unfortunately, **circumstances continue to deteriorate. In addition to the Delta variant of COVID-19, our State now faces the Omicron variant**, which accounts for more than 60% of the new reported cases, according to

> State Epidemiologist Dr. Paul Byers. . . . [I]ndividual judges have the discretion to control their own dockets. In exercising their discretionary powers, individual judges are strongly encouraged to refer to the guidance issued by the MSDH for preventing the spread of COVID-19 (e.g., recommendations on social distancing; personal-protective measures, including face coverings; and capacity limitations for gatherings).

Emergency Administrative Order-25, No. 2021-AD-00001, at 1-2 (Miss. Dec. 30, 2021) (emphasis added).

¶67. In this case, Eason's attorney was sixty-nine years old and genuinely concerned for his health, making it necessary for him to notify his clients of his decision to no longer represent them. His concerns were legitimate, as referenced by the supreme court issuing emergency orders. People were unquestionably dying.[14] Society closed most doors for different periods of time. Eason's lawyer notified his clients on April 2, 2020, indicating that due to his "age and the current circumstances[,]" it was time for him to "retire from active litigation practice." The trial court signed the order to withdraw on August 28, 2020, and allowed Eason forty-five days to find another attorney. The forty-five-day period allowed by the trial court ended in mid-October. In summary, at this point in time from March 2020 to mid-October 2020, approximately 7½ months, COVID-19 was recognized as a major

---

[14] There were 385,676 deaths attributed to COVID-19 in the United States in 2020. Of those deaths, 91% had COVID-19 "listed as the underlying cause of death . . . . For the remaining deaths, COVID-19 was listed as a contributing cause of death." National Center for Health Statistics, *Provisional COVID-19 Mortality Surveillance* (data as of October 10, 2024), https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm. In 2021, the number of deaths rose to 463,267, with 90% of them listing COVID-19 as the underlying cause. *Id.* In Mississippi alone, there were 4,466 deaths in 2020 and 5,082 deaths in 2021. National Center for Health Statistics, *COVID-19 Mortality by State* (data as of Feb. 15, 2023), https://www.cdc.gov/nchs/pressroom/sosmap/covid19_mortality_final/COVID19.htm.

societal health issue. The supreme court issued an emergency order on March 20, 2020, and the trial court allowed an attorney to withdraw from further representation due to health concerns from COVID-19. Yet, this seven-and-a-half-month period was still used against Eason as proof of clear delay.

¶68. Eason's new lawyer entered his appearance in the case on October 12, 2020. South Central filed a motion to dismiss for failure to prosecute on August 5, 2021. The motion alleged an approximate two-year window of time in which Eason did not prosecute his case. That window was defined from the time South Central sent discovery requests on August 21, 2019, and Eason answered (after the motion to dismiss was filed) on August 15, 2021. The trial court held:

> Upon review, the Court finds a clear record of delay by [Eason] in this case. The medical care at the center of this dispute occurred for six (6) days in September of 2017. [Eason] filed [a] Complaint against [South Central] on February 27, 2019, and South Central filed its Answer on July 18, 2019, and propounded its first set of discovery on August 21, 2019. As stated above, prior to filing their responses to discover on August 15, 2021, and then responding the Motion to Dismiss herein on August 16, 2021, **[Eason] had not taken any substantive action in this cause for over two (2) years, since filing their Complaint on February 27, 2019**. Even considering the withdrawal of [Eason's counsel] and the subsequent entry of current counsel, [Eason has] not provided and the Court does not find a valid reason for the [Eason's] delay of over ten (10) months in responding to discovery or taking any action at all to propel the case forward.

(Emphasis added).

¶69. Eason provided a sworn affidavit in his motion to reconsider the order of dismissal as further evidence of COVID-19's effects on the case. Eason stated that during the period of delay that counted against him, "the COVID[-]19 Pandemic impaired my ability and my

availability to assist my attorneys in responding to the defendant's discovery requests." He also stated that he and his stepbrother "lost many family members" due to COVID-19 and complications caused by it. In fact, Eason specifically listed in his affidavit COVID-19 killed "[a]t best count . . . 3 uncles, 8 cousins, and 1 nephew." Eason concluded the affidavit by stating that he, along with all of his "adult family members ha[d] contracted COVID[-]19 at least once." The pandemic's role in some of the delay in Eason's case was clearly evident and without dispute. However, the court's order denying Eason's motion to alter or amend the judgment did not mention COVID-19. The order of dismissal only mentioned COVID-19 when recounting the facts, merely stating that Eason's initial attorney withdrew "due to his age, underlying health conditions, and Covid-19[.]"

¶70.     Between April 2020 and March 2022, the COVID-19 pandemic ebbed and flowed. Some times were more dangerous than others. At least three different times—March 2020, August 2021, and December 2021—Chief Justice Randolph of the Mississippi Supreme Court recognized different outbreaks that produced deteriorating circumstances. Those orders, while ensuring "open courts," recognized the pandemic was causing serious concerns and problems in the judicial system. During those dangerous times, lawyers' lives and law practices suffered the array of effects like all other members of society. But the trial court did not consider any of these concerns in its order. Further, the trial court credited the Easons with a two-year delay when at least seven-and-a-half months of that period—and, arguably, even more time than that—were clearly caused by COVID-19 issues. Yet the trial court failed to consider it in any way when applying its discretion in dismissing the complaint.

¶71. Further, the trial court stressed the ten-month delay in answering discovery by the new attorneys in dismissing the complaint. That ten-month delay was from the date the new attorneys entered an appearance, October 12, 2020, and the date they provided responses to discovery, August 15, 2021. During the approximate ten-month delay stressed by the trial court, an emergency order was issued by the Chief Justice of the Mississippi Supreme Court on August 5, 2021. That order recounted exactly what everyone was living through in those uncertain times. As we thought COVID-19 was diminishing, a new variant would arise. The emergency order recognized the Delta variant was causing conditions to deteriorate. Lawyers were people living through these uncertainties like everyone else. Lawyers had more difficulties communicating with clients, obtaining records, and completing simple legal tasks than were routine before the pandemic. To be clear, I do not dispute the facts and dates in the majority's or the trial court's opinions.[15] However, I do take issue that the trial court failed to properly consider the effects the COVID-19 pandemic was causing during those dates and the effect on lawyers' everyday lives. There is certainly more to the equation of dismissing a complaint during the COVID-19 pandemic than just stating the courthouse doors were "open."

¶72. This Court will reverse a decision in a failure-to-prosecute case "only if it finds the trial court abused its discretion." *Leasy v. S.W. Gaming LLC*, 335 So. 3d 555, 557 (¶6) (Miss. 2022). "In a review for abuse of discretion, the appellate court will consider whether the decision was one of those several reasonable ones which could have been made." *Id.* at

---

[15] Nor do I condone delayed responses to discovery and non-compliance with the Mississippi Rules of Civil Procedure.

(¶7) (internal quotation marks omitted) (quoting *Nunnery v. Nunnery*, 195 So. 3d 747, 752 (Miss. 2016)). "A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Id.* *Leasy* went on to state:

> When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.

*Id.* at 558 (¶7) (quoting *Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989)).

¶73.    Mississippi law favors a trial on the merits. As such, "[b]ecause the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly." *Holder v. Orange Grove Med. Specs. P.A.*, 54 So. 3d 192, 196 (¶17) (Miss. 2010) (quoting *Miss. Dep't of Hum. Servs. v. Guidry*, 830 So. 2d 628, 632 (¶13) (Miss. 2002)). "The mere fact that delay occurs in the prosecution of a case is not sufficient to warrant dismissal for want of prosecution." *Barry v. Reeves*, 47 So. 3d 689, 694 (Miss. 2010). "It must be clear from the record that the delay was the result of the plaintiff's failure to prosecute the claim, **rather than extrinsic factors** beyond the control of the plaintiff." *Id.* (emphasis added). Further, under the controlling decisions, "[t]here is no set time limit on the prosecution of an action once it has been filed." *Am. Tel. & Tel. Co. v. Days Inn of Winona*, 720 So. 2d 178, 180 (Miss. 1998) (citing *Watson v. Lillard*, 493 So. 2d 1277, 1279 (Miss. 1986)).

¶74.    This Court was faced with a similar scenario involving a dismissal for failure to prosecute in accordance with Mississippi Rule of Civil Procedure 41 in *Wren*, 390 So. 3d at 1013-15 (¶¶1-7). We stressed that "[t]his Court utilizes an abuse-of-discretion standard of

31

review when faced with a trial court's dismissal for lack of prosecution pursuant to Rule 41(b) of the Mississippi Rules of Civil Procedure." *Id.* at 1015 (¶8) (citing *Holmes v. Grisby*, 234 So. 3d 425, 427-28 (¶8) (Miss. Ct. App. 2017)). This review is "**on a case-by-case basis**." *Id.* (emphasis added) (quoting *Sullivan v. Maddox*, 283 So. 3d 222, 234 (¶54) (Miss. Ct. App. 2019)). This Court affirmed the trial court's Rule 41 dismissal in *Wren*.

¶75. The distinguishable facts between *Wren* and the case at bar, however, differ to the point where opposite results should be reached. First, in *Wren*, the attorney for the plaintiffs **never** filed a motion to withdraw from further representation due to health concerns caused by the pandemic, as Eason's attorney did in this case. Second, the court in *Wren* never entered an order allowing the attorney to withdraw or allowing time for a new attorney to enter an appearance. Last—and most important—the court in *Wren* actually considered the effects of the COVID-19 pandemic as part of the clear delay on the part of the plaintiff in prosecuting the cause. Here, despite being argued by Eason, the trial court did not consider whether the pandemic's effects contributed to the delay in prosecuting the cause. The trial court's order dismissing this case was void of any consideration as to COVID-19 and its potential effect on the record of delay in this case, mentioning only that Eason's attorney withdrew because of it. This remains true even though Eason's attorney filed a motion to withdraw because of COVID-19, and the court not only authorized the withdrawal but granted additional time for a new attorney to make an appearance. I think the trial court should have considered those factors before exercising its discretion to forever bar a litigant from the doors and a trial on the merits.

¶76. In the end, this case came down to discovery not being answered until approximately ten months after Eason's new attorney entered an appearance. Yet, those ten months occurred during a very complicated time of serious social health concerns, causing untold and very difficult considerations for lawyers practicing law. COVID-19 caused **"extrinsic factors** beyond the control of the plaintiff," and the failure to at least consider it as a factor when applying discretion is an abuse of that discretion. It is clear that COVID-19 caused more problems within the practice of law than the trial court considered when applying discretion in dismissing the complaint. Further, it was unfair to assign a two-year time period of "delay" to Eason when a portion of that two-year window was court-authorized, and another large portion was COVID-19 complicated. The court's lack of consideration for the COVID-19 pandemic was an abuse of discretion, especially when it was alleged to clearly have caused part of the delay. Accordingly, I would reverse the dismissal of the complaint for an abuse of discretion and remand this case to the active trial docket.

**McDONALD AND McCARTY, JJ., JOIN THIS OPINION. WESTBROOKS, J., JOINS THIS OPINION IN PART.**